OPINION ot the Court, by
Ch. J. Eoyle.
James Smith, deceased, by his last will devised to his son Jamos a certain part of a tract of land of which he died seised, and the residue of the same tract he devised to his son Edmund. .
James and Edmund entered into a verbal agreement to exchange lands, by which Jamas was to get ail that was devised to Edmund, and to retain so much of his own adjoining it, as would make 165 acres, and Ed-as'idae, and a dividing line nvnnd was to have all the r was run between them by the surveyor of the county. Soma time thereafter, James sold to John Smith, and gave his obligation to convey with general warranty the tract as laid off to him under the agreement with Edmund, estimated at 165 acres ; but before a conveyance was made, it was discovered that there was a mistake made in running the dividing line between James and Edmund, and that instead of 165 acres, James’s tract contained 189 acres and some poles, and both .lames and Edmund were unwilling that John should have that quantity, and refused to convey. To settle the dispute between them, however, Edmund and John verbally agreed that a new division line should be run, giving to John something more than the quantity of 165 acres ; and a line was accordingly run ; but, as Edmund after-wards alleged, was run so as to give to John more than was intended by their agreement, and he was unwilling that John should have the quantity laid off to him by that line. In this state of the dispute between the ..parties, James had the nett quantity of 165 acres laid off, and executed and tendered a deed therefor to John ; but lie refused to receive it, and brought his suit in chancery against James and Edmund, praying for a conveyance according to one or other of the above mention-fed division lines, and for general relief.
James and Edmund both admit by their answers the agreement to exchange their lands upon the terms before mentioned, and that there was a mistake in running the line between them ; James alleges that he labored under an ignorance of that mistake when he sold to John, and that the sale to John was of 165 acres only, and relies that he is bound to convey no more. As to the agreement to run a new division line, Edmund states that it was *82 made for the purpose of preventing farther dispute, ⅞⅛¾ that he %as willing at any time before suit was brought that John should have the quantity agreed on ; but as there was a mistake made in running that line, and John refused to correct it, and has brought suit, he pleads and relies upon the statute against frauds and perjuries.
The court below decreed the bill to be dismissed, from which John has appealed to this court.
It is plain that the contract between James and Edmund to exchange lands must be taken to be made upon the terms which they admit. There is indeed no other evidence in the cause of that agreement, but their admissions or confessionsand if there were such evidence, though it should tend to prove the terms to he variant from those they-admit, yef as the agreement was merely verbal, it could have no effect in this case : fornei-tlver party could cn force the agreement variant from what was admitted by the other against his consent. As then the division line between them was by mistake so run as to give to James a greater quantity than by the terms of the agreement he was entitled to, he can have no just claim to that extent under the agreement 5 and as John claims under James, bis right cannot be more extensive than -that of James -y and consequently he cannot be entitled to a decree for a conveyance according to the division line as run between James and Edmund. To his right to a decree for a conveyance according to the line run under-the agreement-with Edmund, it was correctly admitted by his Counsel that the statute of frauds and perjuries interposes an insuperably objectionJ and nothing need therefore be said «pon that point. But as John claims under the prayer for general relief, a com* pensation in damages from James for all the - land above the quantity of 165 acres contained in the boundary demanded by the line as first run between James and Edmund, it is proper to .enquire how far he has shewn himself entitled to the aid of the court to enforce his claim. .
Were we to be governed alone by the literal impost of the obligation given by James, to John, there would perhaps be some room to.doubt upon this point. But it ⅛.evident that the obligation was given under the influence of a mistake, as to the quantity contained ⅛ the boundary described in the obligation, and that in fact Jbhn purcliased and paid for no more than 165 acres, ft *83 ⅜,stipulated price per acre; aiul although the obligation given by James to John might upon its lace be coextensive with the claim set up by the latter, yet we cannot doubt the propriety of resorting to such extrinsic circumstances to repel the application to. a court of. equity to enforce the claim.
The decree must therefore he affirmed with costs.