Chief Justice Robertson
delivered the Opinion of the Court,
In March, 1829, Burr Harrison sold and covenanted to convey to Daniel Talbot, “ all that tract or parcel of land,” near Bardstown, lion which Col. Andrew Hynes died,” describing it by its boundary, and designating it as containing four hundred acres ; and Talbot covenanted to pay six thousand dollars, “/or and in full consideration for the absolute purchase of the said tract or parcel of .land”
Alfred W. Hynes, to whom the tract had been devised by Andrew Hynes, .his father and the father-in-law of Harrison, also covenanted to unite in the conveyance of the legal title to Talbot.
Having ascertained, by actual survey, after he was put into the possession of the land, that the boundary contains four hundred and ninety acres, Talbot filed a bill in chancery, to coerce a conveyance for the entire tract, for the stipulated price — six thousand dollars. Harrison insisted, that the sale was, in fact, not by the tract in gross, hut by the acre, at fifteen dollars an acre ; that, from a family tradition, the tract had been called one of four hundred acres, and was, as a matter of .course, estimated in the contract, as of that quantity, or thereabouts. He therefore resisted the prayer for a decree for the whole four hundred and ninety acres, at the price of six thousand dollars; but proposed to make a title, either to four hundred acres for the six thousand dollars, or to the four hundred and ninetyacres for a proportionate consideration.
After sundry depositions had been taken, to prove various extraneous facts on each side, the circuit court decreed a specific execution of the contract for the entire tract of four hundred and ninety acres, upon full *259 payment of the stipulated consideration of six thousand dollars.
In the absence ofproofoffraud,. or of mistake in ¡drawing a contract, orsubsaquent modification of its technical import— a written contract must have the same effect in chancery, as' at law — parol testimony, to change its effect, being inadmissible.
The. main question in this case.
In Va. it has been decided, that, where a very great difference (33 per cent.) has been discovered, between the actical, and the estimated, quantity of land sold in the gross,the contract may be presumed to have been founded on a gross mistake as to quantity, and the injured party may have reliefin chancery. An(l, also, that where the difference is nolgrea ter' than a purchaser in gross might have anticipated, there can heno relief!
That decree is now called in question, by this appeal.
The terms of the written memorial import, according to the established construction, a sale in gross; and the canons of interpretation are the same and should have an equal effect in every forum. Wherefore, as there is no proof of fraud, or mistake, in the reduction of the agreement to writing, or of any subsequent waiver or modification of the technical import of that contract, and as, without some s.uch proof, parol testimony is inadmissible in equity, as well as at law, for contradicting or explaining the legal effect of written evidence, we shall consider the contract in this case as a sale of « tract of land supposed to contain four hundred acres more or less.
Thus considering the contract, what is the decision of conscience and of established principles of equity ?
Adjudged cases will, we think, when properly collated and scrutinized, furnish a clue for a satisfactory solution.
In the case of “Quesnal vs. Woodlief et al.” decided by the Court of Appeals of Virginia, in 1796, and which may be found in a note to the 2 vol. of Henning and Munfsrd, page 173, — Woodlief having, for a stipulated sum, sold to Quesnal a tract of land described as containing eight hundred acres, and afterwards, without an actual survey, made a deed for that quantity, “more or less but Quesnal having afterwards ascertained, that the boundary contained only six hundred and eight acres, one rood and thirteen perches, the court decided that he should be exonerated from paying for the deficiency in the estimated quantity, “that deficiency being (in the language of the opinion rendered) too great for a purchaser to lose under an agreement for a reputed quantity, notwithstanding the words ‘ more or less’ inserted in the deed, which should be restricted to a reasonable or usual allowance for small errors in surveys and for variation in instruments.”
The same court decided, in “Nelson vs. Matthews,” 2 Henning and Munford, 164, that, as Matthews had sold and conveyed, in gross, to Nelson, a tract of land represented to contain five hundred and seventy two acres *260 and two smaller adjoining tracts described as containing altogether two hundred acres, and the larger tract containing in fact only five hundred and forty four acres/ had been conveyed to Nelson as containing five hun- and fifty two acres, and, as one of the small tracts^ of forty one acres, was entirely lost, and the other, estimated at one hundred and fifty nine acres, was covered, to the extent of fifty one acres, by the larger tract,— Nelson should have a deduction from the stipulated price for the amount of the average value of forty one acres, and fifty one acres, and also of twenty.acres, the difference between the quantity of the large tract, as described in the deed to Matthews, and as described in the deed from him to Nelson; but the actual deficiency being twenty eight acres, nothing was allowed for the residual eight acres,-, because, in the language of the court, “such deficiency (wag) not more than a purchaser iy> gross might reasonably expect.”
Review of the' tacky1 deciSns upon alleged quantityoHand Result,, that, in an executed contract, where there has been a 'gross mistake in the quantity sold, for “ more or less,” the complaining party, who has practised no fraud, nor any culpable negligence, norimpaired his equity in any other way, is entitled to relief in chancery. And the condition of the injured party is still more favourable, where th® opposite party comes into chan eery for a specific execution —for then, he. must show that he has a clear-right to it, equitably and conscientiously' oihervvise,hewili be left to his legal remedy.
*260 In that case, it is evident that the deduction for the twenty acres, was allowed on the ground that, as Matthews had represented to Nelson, that the large tract contained that much more than the deed to himself for the same tract described, he should be presumed guilty, to that extent, .of a fraud; and as relief was not given to the extent of the difference between the actual quantity — five hundred and forty four acres, and that described in. the deed to Nelson — five hundred and seventy two acres, we may infer that a deficiency of'twenty eight acres in a tract supposed to-contain five hundred and seventy two acres, was not deemed sufficient to justify relief on the ground of mistake. Bat it is equally, and even more clear, that in the opinion of that court, a deficit of thirty three per cent, should, per se, entitle to relief, on the ground of gross and palpable mistake, because such a. deficit was the only expressed ground for granting relief as to one of the smaller tracts.
In Young vs. Craig, 2 Bibb, 270, compensation was sought bY Craig> ior fiffY six acres of surplus beyond the estimated quantity in a tract of land which he had conveyed to Young as containing four hundred and twenty five acres, “be the same more or less.” But relief. *261 was denied by this court, on the ground that, in such a case, such an excess was deemed insufficient to entitle the vendor to relief.
As that is a leading case, and as the opinion, like every other delivered by that eminent jurist, the late Chief Justice Boyle, is distinguished by a peculiar precision and perspicuity, the following brief extracts will not be deemed superfluous.
“There is no novelty or peculiarity in the principles upon which questions of this sort depend. In contracts of this kind, the same good faith is required and, the same responsibility attaches to its violation which law and reason prescribe in every description of contract. If, through fraud or gross and palpable mistake, more or less land should be conveyed than was. in the contemplation of the seller to part with, or the purchaser to receive, the injured party would be entitled to relief, in like manner as he would be for an injury produced by a similar cause in a contract of any other species.” “ Contracts for the sale of land may be .considered of two descriptions: First, where the sale is of a specific quantity, which is usually denominated a sale - by the acre; and second, where the sale is of a specific tract, by name or description, each party risking the quantity. The latter, for the sake of brevity, is sometimes called a gale in gross.”
“ It is evident that, in a sale per acre, much less variation from the quantity intended to be conveyed, would afford evidence of a mistake which would justify the interposition of a court to correct it, than would he sufficient for that purpose in a safe of the other description” — “Each case must depend much upon its own particular circumstances.”
The plain and most obvious meaning of the expression '■'■be the same more or less” is that the parties were to run the risk of gain or loss, as there might happen to be an excess or deficiency in the estimated quantity.”
“ We do not mean to be understood that, in a sale of this kind,The surplus or deficit might not be so great as to authorise an inference that it had been produced by *262 fraud or mistake ; but, in this case, where the estimated quantity was four hundred and twenty five acres, and the largest quantity which any subsequent survey has made it is four hundred and eighty one, the surplus (joes n0£ appear go'great as not to be within the reasonable limits of a risking bargain of this kind.” And for this last position, Sugden on Vendors, 201, first Am. Ed. is referred to — where the general principle is correctly laid down, and where, also, a case is cited in which relief was refused to a purchaser of a tract estimated at one hundred acres, though the actual quantity was only sixty.
In Fisher vs. May’s heirs, 2 Bibb, 451, the court decided, that a vendor, who had conveyed and received pay for a tract estimated as containing four hundred acres, in 1786, was not entitled in equity to compensation for a surplus of only twenty two acres, and concluded with the following just and reasonable'remark : — “the inference of either fraud, or gross and palpable mistake, in the conveyance, is unwarranted; twenty two acres of surplus, in the conveyance of four hundred acres in the year 1786, is believed no very unusual thing; and were old conveyances permitted to be called in question for sucii cause, no doubt it would open another scene of contention about land the pernicious effect of which is almost incalculable.”
In Smith vs. Smith, 4 Bibb, 81, this court decided, that it was not equitable to compel a specific execution of an agreement for the sale of a tract of a hundred and eighty nine acres, when the parties made the contract under the erroneous belief that the boundary included only one hundred and sixty five acres, and fixed the price accordingly. And the opinion, written by Chief Justice Boyle, closes with the following remarks : — “ But it is evident that the obligation was given under the influence of a mistake, as to the quantity contained in the boundary described in the obligation, and that, in fact, John purchased and paid for no more than one hundred and sixty five acres, at a stipulated price per acre; and although the obligation given by James to John, might, *263 upon its face, be coextensive with the claim set up by the latter, yet we cannot doubt the propriety of resorting to such extrinsic circumstances, to repel the applicalion to a court of equity to enforce the claim.” From the language thus quoted, we may infer that the court was of the opinion, that the deficit — only about ten per cent, was insufficient to shew, per se, a mistake, but that parol evidence was admissible to repel a specific execution, by proving circumstances which a complainant, seeking relief against the legal effect of a conveyance, would not have been permitted to prove. And such doctrine needs not the support of authorities; it is founded on a plain principle of reason and of equity.
The same • doctrine was reiterated and applied in the similar case of Shelby et al. vs. Smith’s heirs and Ex’ors. 2 Marsh. 513. In that case, in the opinion written by Judge Mills, the following language will be found “This court has determined that, in cases of executed contracts, surplus shall not be recovered back when the sale was made by the tract, and not by the. acre. In such a case, the party purchasing may readily be presumed to run the risk of deficiency and to disregard it' in the stipulation. It would, therefore, be improper to disturb the contract after he had waived the enquiry.’ But where the parties have both believed that there were two hundred acres in the tract, and it has been so represented at the sale, and, owing to a hidden mistake long ago made, it is deficient in that quantity to so large an amount as the present survey, (about thirty acres) and the contract is executory, we conceive it ought to be provided for by the chancellor, before he enforces the contract, as other losses and defects.”
The case of Cleveland vs. Rodgers, 1 Marsh. 193, decided between the dates of the two last decisions, is vaguely and unsatisfactorily reported, and may appear to be rather anomalous. There it would seem, that a specific execution was coerced, though there might have been a surplus of about one hundred and sixty acres, in a tract sold in gross, as a tract containing about four hundred and fifty acres.. But whether there was such a surplus. *264 or, if (here was, whether the complainant was the original or a subsequent bona fide buyer, without notice of any surplus, the opinion, as published, does not furnish the means for determining. If such surplus was satisfactorilv established, and if the party seeking a decree, was the person who made the contract with Cleveland, who held the legal title, the opinion is inconsistent with the principle of all the other cases of a similar character, tifiless the peculiar terms of the agreement, or the proof of collateral facts, shewed that the surplus had been waived by the vendor, or was not greater than he had supposed or ought to have expected ; and, we are inclined to infer, that the latter was one ground of the opinion in that case.
In Rodgers vs. Garnet, 4 Mon. 269, a conveyance in gross having been made of a tract of land supposed to contain about seventeen hundred acres, which had been sold in 1794, when it was deemed o.f but little value, this court refused to decree to the vendor compensation for about three hundred acres of surplus. There is nothing novel or peculiar in that case. First — considering the locality and value of the land, the time of the contract, the size of the tract, and the quantity of surplus, had the agreement remained executory, there may be sufficient reason to doubt whether, according to the application of the true principle in any authoritative decision, the surplus would have presented a sufficient barrier to a .decree for a specific execution. Secondly — The deed and the circumstances attending its execution repelled all equitable claim to any restitution.
In Hampton’s heirs &c. vs. Eubank &c. 4 J. J. Mar. 634, this court directed a specific execution of an executory agreement for the sale, in gross, of a tract of land supposed to contain four' hundred acres, although there was a surplus of thirty five acres.
The agreement, was made in 1789; and other facts, also proved in the cause, induced the conclusion, that the surplus was not larger than the parties expected, or might reasonably have expected ; and the court said, in the opinion, that “ if there was evidence of fraud or *265 mistake in reducing the contract to writing, or if the surplus beyond the quantity shewn by the proof to have been intended by the parlies to be. conveyed, was excessive, there might be gróund for the chancellor to interpose.”
From an analysis of the cases, thus cronologically reviewed, the following principles may be deduced. First' — When it is evident that there has been a gross mistake as to quantity, and the complaining party has not been guilty of any fraud or culpable negligence, nor has otherwise impaired the equity resulting from the mistake, he may be entitled to relief from the technical or legal effect of his contract,, whether it be executed, or only executory — the passing suggestion, in 2 Mar. 513, intimating the contrary in cases of executed agreements, even were it not obitur, would not be authoritative, because, in its universal application, according to its literal import, it would not only be irreconcilable with an obvious and pervading principle of reason and justice, but would conflict with “Young vs. Craig,” (supra,) and with perhaps every other case which was ever decided on that point. Second — In executory contracts of sale in gross, it will not be so difficult to obtain relief from the litaral effect of. the agreement, as, for obvious reasons, it must generally be after the legal title has passed; and when the buyer seeks a specific execution, the seller will be permitted to resist his equity by consistent parol proof, which might be inadmissible were he, instead of the buyer, the complainant; and he may thus succeed whenever he can shew, that equity and conscience are opposed to a rigid and literal enforcement of the terms of the agreement, or unless the equity of the complainant’s prayer is manifest; because, as a decree for a specific execution is a matter of sound judicial discretion, the chancellor will leave a party to his legal remedy unless his equitv be clear and strong The cases of Smith vs. Smith, and Shelby et al. vs. Smith's heirs, (supra) are strong and direct authorities. In the first, the surplus was only about ten per cent.; in the last, the deficit Was only about fifteen per cent. But in each case, the proof evinced such a mistake about quantity, as, in the opinion of this court, to entitle the party, resisting *266 jjic ljfera3 enforcement of tbe contract, to relief, to the extent of the surplus in the one case, and of the deficit in the other.
Every case of a qaieof land,upon which relief is sought in chan ■eery, upon the ground of a mistake in thequan tity, must de■pend on its own peculiar circum •stances.
•subdivided into cach classedic^ tfaed.
Where the sale the*'tractor where the quantity is stated merely by way of description, chancery can afford no relief (when there is ao fraud) on the ground of mistake in the quantity. — BuW*
The foregoing principles are just and well established. The only difficulty is in their proper application j and hence alone has arisen any apparent discrepancy, in any respect, in the cases which have been just reviewed.
As was truly observed in Young vs. Craig, the equity of each case must depend on its own peculiar Circumstances. The relative extent of the surplus or deficit cannot, perse, furnish an infallible criterion. The conduct of the parties — the date of the contract — the value, and extent, and locality, of the land — the price — and other nameless circumstances, are always.important and generally decisive.
Sales in gross mav be subdivided into various subordinate classifications ; First — Sales strictly and esseutialN by the tract, without reference, in the negotiation or jn the consideration, to any estimated or designated quantity of acres. Second — Sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in tlie contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner as to shew that the parties intended to risk the contingency of quantity, whatever it might be, or how-much-soever it might exceed, or fall short of, that which was mentioned in the contract. Third — Sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate, or intend to risk more than the usual rates'of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth — Sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood hv the parties. Contracts belonging to either of Uip two first mentioned classes, whether executed or executory, should *267 not be modified by the chancellor when there has been ao fraud. Such was the contract in the case of Brown vs. Parish, lately decided by this court. — Ante, 6.
Where, it ap-■ pears that tlm’ the sale was in gross — the parcontempkte^t intend to riskconmion^surplus, or deficit; eale,Wtho,etechnicaiiy a sale inffet,’a'lale by the acre, the injuredparty may have relief in cka»cery — pvovided he has-not, by his con-'his ex-quity.-
a wn-tten contract may de iand,° stde gross, aetechnical impon of the'writing, parol evidence —not necessarily conflicting with the written . fwidence, may be admitted, to show that the contract was in fact made with reference to the number of acres, as to which the parties wore under a gross mistake, when the contract ysss «drawn. ' ''
But in sales of either of the latter kinds, an unreasonable surplus, or deficit, may entitle the injured party to equitable relief, unless lie has, by his conduct, waived or forfeited his equity.
Now the just application of the foregoing principles is hot deemed difficult in this case. This .belongs, we Í3ave no doubt, to the third classification. And even if, at the time of the contract, a deed, instead of a-covenant, had been executed, we should be ijt-r.ongly inclined to the opinion, that Harrison would have been equitably , entitled to some reclamation for an unexpected and unreasonable surplus. The date of the contract, the val- ue of the land, and its locality, would altogether lend strongly to the inference that, as there is no proof that ilie parties contemplated more than an ordinary' variation from the estimated quantity,- the utmost range of the contingency which they intended that the terms of their written agreement should embrace, would, not include so large a surplus, or deficiency, as ninety acres. And hence, asno circumstance rebutting the equity re-' suiting from so gross a .mistake, has been proved, it would be hard to decide that a conveyance, instead'of the covenant to convey, would have precluded Harriason from un equitable restitution. But as the legal title has never been transferred to Talbot, and he has invoked the equitable interposition of the chancellor, he himself must do that which is equitable ; and, unless he will-consent to do so, his bill should be dismissed.
In addition to what has already' been mentioned, as conducing to evince a gross mistake as to the actual quantity within the boundary, another and a strong fact in opposition to Talbot’s asserted equity, has, we ihink, been satisfactorily proved : and that is, that the land was, in fact, sold at fifteen dollars an acre: and, estimating the total quantity at about lour hundred, the *268 parties thus agreed on the aggregate consideration of six thousand dollars. Such proof is doubtless admissible, to repel the equity asserted to a specific execution of the contract according to its technical or literal import. It. does not necessarily conflict with, or contradict the .written evidence ; nor does it shew, that the parties did not. understand the terms of-their written memorial; but it. only shews, or tends to prove, that there was a gross mistake as to the true number of acres; and hence similar evidence was admitted in the case of Smith vs. Smith, and was deemed satisfactory and controlling.
Decree by this court: — thevendee to pay for the surplus, dr acceptadeedfor the 400 acres, without it, (an option which the vendor had offered him;) or have his bill dismissed.
A complainant cannot have a specific execution of a contract in writing, varied or modified by paroievdenoe.
A vendee required to surrender a surplus, may eleet from which end or side of the tract it shall be taken.
Without amplifying by further illustration or argument, deemed superfluous, we cannot 'resist the conclusion, that a court of conscience, called on to exert its. extraordinary equitable discretion, in coercing a specific execution, cannot, consistently with justice, principle or authority, grant the prayer of the appellee.
Wherefore it is decreed by this court, that the decree of the circuit court be reversed, and the cause remanded, with instructions to dismiss the bill, and remit Talbot to his legal right and remedy, unless lie shall elect to take a conveyance, as proposed by Harrison, for four hundred acres, for the original consideration of six thousand, dollars ; or a conveyance of the entire tract, on payment for the surplus, at the rate of fifteen dollars an acre; and with instructions, also, to dismiss Harrison’s cross bill — because, he cannot, in the attitude of a complainant, compel a specific execution of the contract, varied or modified by parol evidence, nor otherwise than according to the import,and effect of the written memorial of the sale.
If Talbot should elect to take a conveyance for four hundred acres, he may elect on which end or side ol' the entire tract, the ninety acres shall be taken off for Harrison.-