COLUMBUS M. PAYNE, administrator, plaintiff in error, *vs.* THEODORE M. ELYEA, administrator, ANN E. ELYEA, administratrix, *et al.*, defendants in error.

1. Payne sold a parcel of land in the city of Atlanta to Ragsdale, giving a bond for titles describing the land as being two hundred by four hundred and thirty feet, and containing two and one-third acres, more or less. Ragsdale having mislaid the bond, gave Willingham an order to Payne, for Payne to execute to Willingham a deed to the lot, stating it to be about two acres, without giving the boundaries. Under the order Payne executed to Willingham a deed referring to the order and making it a part of the deed, but described the boundaries as being four hundred by four hundred and thirty feet, and containing two acres, more or less, and reserving a street thirty feet wide running east and west through the centre. Willingham conveyed to Elyea, describing the lot as it was described in Payne's deed to him. On a bill filed by Payne against Willingham and Elyea to reform the deed on the ground of mistake, etc., alleging that he had only sold two and one-third acres to Ragsdale, being the east half of the block which contained four and one-third acres, setting out the foregoing deeds, order, and the bond, (which had been found,) and praying a decree correcting such mistake in his deed so as to make it a conveyance for the east half of said block, in accordance with the real contract between them, the jury found as follows: " We, the jury, find for complainant, and recommend that the deed be reformed, and that defendant, Elyea, had sufficient notice:"

*Held,* That the verdict is not sufficiently certain and definite to fix the quantity and identity of the land intended to be conveyed so as to authorize a full, definite and final decree thereon.

2. On the trial of such a case, the complainant, Payne, is a competent witness on the issue of a mistake in his deed to defendant Willingham, although the co-defendant Elyea, the vendee of Willingham, had died since the filing of the bill, and his representative is made a party.

3. The portion of the answer of the witness, Payne, to the second interrogatory which was read to the jury, was not an answer to that part of

the interrogatory which was objected to as leading, and was properly admitted. The third interrogatory was not leading—nor does the fact that a previous interrogatory was illegal because it was leading—make the balance of the witness' answers to other interrogatories incompetent.

4. The affirmance of the judgment of the Court below granting a new trial, is limited to the first ground specified in this syllabus, this Court being of the opinion that the evidence was sufficient to authorize a decree to reform the deed to Willingham, and that the verdict as to notice to Elyea was not so contrary to the evidence as to demand that it should be set aside on that ground.

Equity.    Mistake.    Verdict.    Witness.    Interrogatories. New trial.    Before Judge HOPKINS.    Fulton Superior Court. October Term, 1871.

Edwin Payne filed his bill against Benjamin V. Willingham and Charles H. Elyea, making substantially the following case: Complainant had previously been the owner of a lot of land in the city of Atlanta, containing four and one-third acres, more or less. In August, 1868, he sold the east half of this lot to one Ragsdale, and gave him a bond for titles, with the following description: " Commencing on the southwest corner of lot known as the Whaley brick-yard, at the distance of thirty feet from the said corner, and running west two hundred feet, and thence north four hundred and thirty feet to a fifty foot street, and thence east two hundred feet along said street, and thence south four hundred and thirty feet to the beginning, containing two and one-third acres, more or less."

Before this sale complainant had conveyed to George Gibbon one-half an acre off the south-west corner of the four and one-third acre block, of which the aforesaid land constituted a part.

By authority from said Ragsdale, complainant made the deed which he was obligated to make under said title bond, to Benjamin V. Wilingham on the 24th of January, 1863. In this deed there is a mistake, the first and third lines in the descriptive clause of the deed being four hundred instead of two hundred feet, as it is written in the title bond ; but the

number of acres is two and one-third, more or less, in the title bond, and two, more or less, in the deed.   As appears by inspection, the length of lines in the bond makes but little more than two acres, while in the deed it makes four and one-third acres.   The lines are just doubled on two sides of the lot.   On the 4th of September, 1865, said Willingham sold the same land to Charles H. Elyea, and made him a deed. The length of lines is the same as written in the deed from Payne to Willingham, and the number of acres the same, to-wit: two acres, more or less.   The consideration in the deed from Payne to Willingham is $1,600 00 (Confederate money;) in the deed from Willingham to Elyea, $525 00, (United States currency.)   Elyea, before and at the time he purchased said two acres of land from said Willingham, had notice that the description in the deed from complainant to Willingham contained a mistake, and that said deed, as well as the one from Willingham to him, was only intended to convey two acres of land, more or less, instead of four and one-third acres, as the distances mentioned in said deeds would indicate.   Complainant waives discovery.   Prayer, that Elyea be enjoined from encumbering or disposing of the land in controversy until the further order of the Court ; that the mistake in said deeds may be corrected, and that the writ of subpœna may issue.

Elyea answered said bill substantially as follows: Denies all notice of the mistake.   When about to purchase, Willingham declined to go with him upon the land on account of the distance and the heat of the weather.   He then went without him ; after reading the deed, (meaning the one from Payne to Willingham,) and noting the boundaries as therein described, with this description as a guide, both as to distance and *direction,* he stepped off the land before purchasing it, and by this means formed his opinion of its position and value.   Acting on the opinion thus formed, and without knowing or suspecting any error or mistake in the deed as to the said *boundaries,* he purchased and paid for said land.   Defendant admits that there was a deed on record for one-half an acre of the four and one-third acres, but denies that he knew of it.   This deed

is from Payne to Gibbon. He acknowledges the superiority of the title to Gibbon, and claims, in consequence thereof, indemnity from Payne for a breach of his warranty to that extent. The deed which Elyea had when he looked at the land before buying it, recites that it is to convey the same land sold to Ragsdale by title bond ; also, recites the power of attorney made by Ragsdale to Payne, authorizing the latter to execute a deed to Willingham. He supposed that the deed covered the identical land mentioned in the bond.

The quantity of land mentioned in said power of attorney is two acres, more or less.

Pending the litigation Payne and Elyea both died, and their administrators were made parties. Payne died after his evidence had been taken.

The testimony introduced was substantially as follows :

Payne testified, that he sold only two acres to Ragsdale, and Willingham bought from Ragsdale the land mentioned in the bond to Ragsdale. He did not read over the deed before signing it ; supposed it was all right, as he regarded Willingham as an honest man. He is satisfied Willingham made a mistake in describing the land four hundred feet by four hundred and thirty, he having sold him two hundred by four hundred feet, which was two acres instead of four and one-third acres.

Willingham testified, that he sold Elyea two acres more or less ; he sold to Elyea the same land and no more nor less that he purchased from Payne. He does not recollect the boundary lines, and cannot say as to their lengths, but it was two acres. Intended to sell Elyea the same land that he bought from Payne. He thinks the land well sold at the price to Elyea, to-wit, $525 00.

W. R. Venable testified, that he lives near the land, only an alley separating his lot from it. He bought an acre lot at that place in 1865, after the surrender, and paid $600 00 for it. Thinks the land involved in the alleged mistake worth as much or more per acre than the lot of witness, because it lies more level.

John R. Wallace testified, that he is a real estate agent in Atlanta; was engaged in that business in 1866. Knows the land in controversy, and thinks it to have been worth in that year $600 00 per acre; sold land in the same neighborhood at that price.

John Whaley testified, that he was at work at Whaley's brick-yard when Elyea came to look at the land before purchasing it from Willingham. Elyea had with him Payne's deed to Willingham, and witness aided him in stepping off the land as described in that deed. They stepped four hundred feet one way and four hundred and thirty feet the other. At that time the whole lot was vacant, and it so remained until witness, by Elyea's permission, put up the frame of a small house on it. Witness never finished it, because he was informed that Gibbon claimed and had a deed to that part of the lot on which the building was placed. After this Gibbon died, and the half acre covered by the deed from Payne to him was sold by his executor and bought by Elyea. That half acre was a part of the tract stepped off by witness and Elyea, and was as valuable as any other half acre therein embraced. Witness thinks it was the most valuable, as it was the most suitable for building. Witness was at work in the brick-yard for Elyea when the latter gave him permission to build. Elyea stated that if witness would build the house and keep possession of the property, he might occupy the house as long as he wished free of rent. The brick-yard in which witness worked was opened upon the land in controversy, and has been used as such ever since by Elyea and his administrators.

The jury returned the following verdict: "We, the jury, find for complainant and recommend that the deed be reformed, and that the defendant, C. H. Elyea, had sufficient notice. November 15th, 1871.

(Signed)                    "C. A. PITTS, Foreman."

The adminstrator and administratrix of Elyea moved for a new trial upon the following grounds:

1st. Because the Court erred in admitting the evidence of Edwin Payne, objected to by the defendants on the ground that their intestate was dead.

2d. Because the Court erred in not excluding all of Payne's answer to the second direct interrogatory, objected to as leading.

Said interrogatory and answer were as follows: " Please look upon the annexed copy deed and state what amount of land was intended to be conveyed thereby? Was the land sold and intended to be conveyed by said deed a plat four hundred feet square, or two hundred feet by four hundred feet? At what price was it sold, and in what currency were you paid ?"

Answer : " I have looked upon the annexed copy deed. [The amount of land intended to be conveyed was two acres more or less, as is stated in one portion of the deed, and not four hundred feet by four hundred and thirty feet. That four hundred feet by four hundred and thirty feet was put in the deed by mistake of the draftsman of the deed. It should have been two hundred feet by four hundred feet. I never intended to convey more than two acres more or less, as is recited in the deed.] I sold it for about $1,600 00 in Confederate money. It was worth at that time, in good money, $300 00 or $400 00."

The portion of the answer included in brackets was excluded by the Court.

3d. Because the Court erred in not excluding Payne's answer to the third direct interrogatory, objected to as leading.

The said interrogatory and answer were as follows: "Was or was not the land described in the deed as being four hundred feet square, a mistake? If yea, in what does the mistake consist? If the whole four hundred feet was not sold or intended to be conveyed by said deed, how much and what portion of said land was sold, and intended by said deed to be conveyed?"   .

Answer: "The land described in said deed as being four hundred feet square was a mistake. The mistake consists in

the number of feet. I did not sell four hundred feet square, but two hundred feet by four hundred feet. I do not now remember the boundaries. It was the same bargained to Mr. W. L. Ragsdale, for which I gave him bond for title. That bond calls for two acres, more or less."

4th. Because the Court erred in not excluding all the evidence of Payne, the whole of which was objected to at the trial upon the ground that it was affected throughout by the aforesaid leading interrogatories.

5th. Because the verdict is incomplete and does not dispose of the whole subject matter of the bill.

6th. Because the verdict was too vague and uncertain to be the basis of a full, definite and final decree.

7th. Because the verdict was contrary to the evidence.

The motion was sustained and a new trial ordered. Whereupon the complainant excepted.

COLLIER & HOYT, by P. L. MYNATT, for plaintiff in error.

By construction, the Court below arrives at the conclusion that the mistake is in the number of acres mentioned, and not in the length of lines, so that the purchaser buys and pays for two acres, but by legal construction he is informed that he got four. That this is not a proper rule of construction: See 1 Greenleaf's Evidence, section 301, note 2; Lee *vs.* Hester, 20 Georgia, 588; Harrison *vs.* Talbot, 2 Dana, 258; Sugden on Vendors, 201, 437; 1 Hilliard Ven., 309, 313, 318.

This is a patent ambiguity. If too uncertain for the intention of the parties to be carried out, then the instrument is void: 2 Phil. Ev., 749, (note;) Keer on F. & M., 435; 2 Wash., on Real Estate, 628, 629. But the purchaser, Elyea, has notice by the deeds in his hands referring to the title bond and power of attorney, of the mistake, and how it was committed, and cannot therefore plead want of notice: 2 Phil. on Evidence, 741, 743; 3 Wash. on Realty, 367; Allen *vs.* Bates, 6 Pick, 460; Fross *vs.* Crith, 20 *Ibid.*, 121; Vance *vs.* Fou, 24 Cal., 444. Ambiguity explained by ref-

erence to papers in his chain of title which he held in his hands, and is presumed to have seen them : Keer on Fraud and Mistake, 317, 236, 242, 240, 241, 250.

All the authorites agree that the cardinal rule is to ascertain and carry out the intention of the parties in the case of patent ambiguity : 1 Greenleaf on Evidence, section 301, note 2 ; 2 Phil. Ev., 746 ; Code, 2713, 2655 ; 3 Wash. on Realty, 349.

Payne was a competent witness. Elyea testified by way of answer. Reason of the rule as expressed in first exception to section 3798 of the Code ceases. Besides, the cause of action on trial was a mistake between Payne and Willingham, and Willingham is still living. Neither the second or third direct interrogatory of Mr. Payne was leading : Greenleaf Ev., section 434.

If interrogatories had been leading it would not follow that all witness' testimony on that subject should be excluded : Hasler *vs.* State, 20 Georgia, 155.

Verdict of the jury sufficiently certain, and covers the issue : Code, 3501, 3502.

L. E. BLECKLEY, for defendants.

*Bona fide* purchaser: Code, section 3064; Mutuality of mistake: Section 3069.   Diligence: Section 3071.   Innocent misrepresentation: Section 3117.   Construction: Section 2715. More or less : Section 2600.   Boundary : 16 Georgia Reports, 141 ; Schley's Digest, 116.

TRIPPE, Judge.

1. The verdict of the jury is too indefinite for a decree to be rendered thereon, so as to fix the identity or quantity of the land that would be conveyed under the deed, reformed as it would be by the decree.   Certainly, reference would have to be made to something besides the verdict.   Shall it be the pleadings or the evidence ?   If the pleadings, then portions of the evidence which could not have been disregarded by the jury, and which are necessary to be considered in getting the exact

boundaries of whatever land does pass, are to be, laid aside. If it be the evidence, then portions of that is not fully consistent with other parts, and it was a matter for the jury to settle every fact necessary to reach the *exact* result required in this case, a result by which metes, and boundaries, and quantity are to be ascertained. If the pleadings and evidence are taken together as a guide, equally as great a difficulty would occur. The verdict should have directed wherein the reformation of the deed should be made, so that the decree by the Chancellor could be full and definite.

2. The Court did not err in admitting the testimony of Payne. Willingham, one of the defendants, was living, and the transaction testified to by Payne, was, as to what occurred between him and Willingham. He asks that his deed to Willingham may be reformed by a correction of a mistake alleged to have been committed between them. What effect the correction may have upon Elyea's rights as against Willingham, we do not say, if indeed it will have any. We only hold that as Willingham is a living party, and as the transaction proposed to be proven by Payne, was only what was the contract between them, Payne is a competent witness for that purpose.

3. The portion of the answer of the witness Payne to the second interrogatory, which was read, related exclusively to the price at which the land was sold in Confederate currency, and its value at the time of sale, "in good money." This was in answer to the last clause of the interrogatory, and stands unaffected, so far as we can see, by the fact that the *first question* in that interrogatory may have been leading. The first part was as to the mistake in the boundaries. The price or the value was another and an independent fact. The third interrogatory was not leading. If it does appear that the propounder may have expected an affirmative answer, to-wit: that there was a mistake, it suggests nothing to the witness, as to what or how much the mistake was. We see no impropriety in the question. If the second interrogatory be objectionable as leading, it does not vitiate the third. To so

hold, would disable a party introducing a witness, if he once put a leading question from further examining that witness on that point.

4. We affirm the judgment of the Court below granting a new trial, on the ground of the indefiniteness or want of certainty in the verdict. We find no fault with it as being without sufficient evidence, either as to reforming Willingham's deed, or as to notice to Elyea: 14 New York Reports, (4 Kernan,) 143 ; 2 Dana, 258.

Judgment affirmed.