Submitted on brief January 16, affirmed January 23, 1917.

## ANDREWS v. SERCOMBE.

(162 Pac. 836.)

**Religious Societies—Conveyances—Validity.**

1. Land was conveyed to trustees of a religious society which abandoned the premises, and it was thereafter sold by order of the general conference by the "trustees of abandoned church property." *Held,* the conveyance was valid in absence of statute, it being in accordance with church discipline, and compliance with Sections 7177, 7178, L. O. L., relating to powers of trustees being permissive and not mandatory, did not apply.

Vendor and Purchaser—Construction of Contract—"More or Less."

2. Where a contract for the purchase of land described it by metes and bounds and ended "containing 32 acres more or less," the plain meaning of the words "more or less" is that the parties are to run the risk of gain or loss, and if there is only a trifle less than 32 acres, the shortage is not material.

> [As to what the expression "more or less" indicates in the description of land conveyed, see notes in 41 Am. Dec. 410; 28 Am. St. Rep. 631.]

From Jackson: FRANK M. CALKINS, Judge.

In Banc. Statement by MR. CHIEF JUSTICE MC-BRIDE.

This is a suit by Aaron Andrews against Winifred Sercombe, Margaret B. McCord and the Big Pines Lumber Company, to foreclose a contract in the nature of a mortgage upon a tract of land in Jackson County. On October 1, 1910, defendants Sercombe and McCord contracted to purchase a tract of land from the plaintiff for the sum of $7,500; plaintiff agreeing to convey the land in question to them by warranty deed. The contract specified that the title was clear of encumbrance, except a mortgage of $100 against which the statute had run. The defendants have paid upon said contract the sum of $2,500 and interest to the amount of $700. The contract further provided for the payment by the obligees of all taxes and public charges, and a failure to pay these entitled the obligor to make payment of the same and charge the sum with interest thereon at the rate of 6 per cent per annum to the installment next maturing. Time is made the essence of a contract as to the payment of principal, interest and taxes; and failure of the obligees to make such payments entitled the obligor to declare the entire debt due and payable at once. The defendants defaulted in all the payments except those above mentioned, and allowed the taxes to become delinquent and a mechanic's lien to be placed upon the

property by the Big Pines Lumber Company, which is made a codefendant. The obligor's warranty deed, accompanied by a copy of the contract, was placed in one of the Medford banks for delivery to the obligees upon compliance with the terms of the contract, and a redelivery to the obligor in case of default. When the entire balance, principal, interest and taxes had become due and delinquent, plaintiff brought this suit.

The defendants set up as a defense the failure of title to 5 acres of the tract and a material shortage in the acreage. There was a decree for plaintiff, and defendants appeal.

Submitted on brief without argument, under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).                                AFFIRMED.

For appellant there was a brief submitted over the names of *Mr. William I. Vawter* and *Mr. T. W. Miles.*

For respondent there was a brief prepared by *Mr. W. E. Phipps* and *Mr. N. W. Borden.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. There was no defect in the title to the 5-acre tract. The title, so far as it pertains to this case, is as follows: In 1872 Jeremiah True and wife conveyed the 5-acre tract to James Thornton, A. H. Boothby, S. L. Powell, J. W. Dollarhide and David Doty, as trustees of the Church of the United Brethren in Christ of Rogue River Mission, and to their successors in interest. It does not appear what was done with the property, but on July 4, 1908, it was reported to the annual conference as abandoned church property; and thereupon the "trustees of abandoned church property" were directed to sell the same, and in pursuance of such direction conveyed it to the plaintiff in this action

by deed executed July 8, 1908. It was contended that
the trustees had no authority to make this conveyance
by reason of the fact that they had not become incor-
porated, under the provisions of Sections 7177, 7178,
L. O. L. We think this position is not well taken.
Said sections are not mandatory, but permissive; and,
in the absence of any statute to the contrary, the dis-
cipline and laws of the church will control as to the
manner of acquiring and alienating property. Refer-
ring to the discipline of the church, we find the fol-
lowing:

"No board of trustees shall begin the building of a
churchhouse or parsonage without first submitting
their plans and estimates of lot, or lots, and building,
to the official board or quarterly conference for con-
sideration, approval, and directions. Nor shall they
proceed to buy or build without first procuring an in-
corporation of their board, such as the state requires,
nor without securing and recording a warranty deed,
the blank form prepared by the Church-Erection
Society, to themselves and their successors in office for
the real estate which they purchase, nor until they
have the necessary means either in hand or sufficiently
assured, thus securing harmony of action and avoid-
ing the incumbering of our houses of worship and par-
sonages with embarrassing debts."

As to the conveyance of property, among others, we
find these provisions:

"When a house of worship outside of the jurisdic-
tion of any quarterly conference ceases to be used by
our own people for preaching or other religious pur-
poses, it shall be the duty of the presiding elder of the
district in which such house is located to report to the
annual conference, which body shall have power to
appoint a board of trustees, who shall rent, lease, or
sell such house of worship, as they deem advisable,
and report their proceedings to the annual conference,
which body shall have power to use the proceeds to

pay debts on other houses of worship, build new houses, or turn the money into the funds of the Church-Erection Society, as may seem proper, at its own discretion; provided, that in no case shall a churchhouse and its premises be sold without the consent of the annual conference within whose bounds it is located. Should any parsonage be permanently abandoned as such, the presiding elder of the district in which such parsonage is located shall report the same to the annual conference, which body shall have power to appoint a board of trustees, who shall rent or sell such parsonage, and pay over the proceeds to the annual conference, which body shall expend the same in paying debts on other parsonages, or in building new ones within its borders. * * Real estate held for church or parsonage purposes shall be subject to the same regulations as houses of worship and parsonages.''

The evidence indicates that the conveyance was made strictly in accord with the rules and discipline of the church, and the title to this 5 acres is perfect: *Nelson* v. *Monitor Cong. Church,* 74 Or. 162 (145 Pac. 37).

2. The testimony does not show clearly any material shortage in the land or any fraudulent misrepresentation as to the acreage, although it is possible that there is a trifle less than 32 acres. The land is described in the contract:

''Commencing at a point on the south line of D. L. C. No. 47, in township 38 south, range 2 west of the W. M., said point being five (5) chains west of the southeast corner of said D. L. C. and from said point running thence west 8.43 chains to the east line of lot five (5); thence south 8.24 chains; thence east 24.92 chains to the county road; thence along said county road as follows: North 31 degrees 29′ west 4.325 chains; thence north 8 degrees 12′ west 10.395 chains; thence north 61 degrees 27′ west 2.01 chains; thence north 69 degrees west 6 chains; thence north 70 links to a point

on the north side of said road; thence west 5 chains; thence south 10 chains to the point of beginning, containing 32 acres, more or less."

Beyond this estimate in the contract there is nothing to indicate that plaintiff was guilty of any misrepresentation as to the acreage, and, indeed, no fraud or misrepresentation is claimed.  It will be noted that in the contract the description of the land is by metes and bounds followed by the statement, "containing 32 acres more or less."  "The plain and most obvious meaning of the expression 'more or less' is that the parties were to run the risk of gain or loss as there might happen to be an excess or deficiency in the estimated quantity": 5 Words and Phrases, 4583, citing *Harrison* v. *Talbot,* 32 Ky. (2 Dana) 258; *Jones* v. *Plater,* 2 Gill (Md.), 125 (41 Am. Dec. 408).

The decree of the Circuit Court is affirmed.

AFFIRMED.

---

'Argued December 27, 1916, reversed January 23, 1917.