JUDGE ROBERTSON
delivered the following dissenting opinion:
Henry Tuggle, having bought from the appellant, Elijah Worley, a tract of land, for the unpaid price of which, he gave his promissory notes, the legal title was conveyed to his son and to his step-son; and having afterwards died intestate and insolvent, this suit in rem was brought against his surviving widow and heirs for enforcing an alleged lien not reserved by the deed, which, as charged, omitted it through mistake. Only one witness testified to the allegation denied by the answer. The circuit court dismissed the petition. Oral evidence of such a mistake in the written memorial of the contract required to be in writing, cannot availably supply the omission or change the legal effect of the written memorial, so as to subject the vendee or the land to any liability not imposed by the writing. Were the law *184 otherwise, the statute requiring written evidence might be evaded and often frustrated by oral testimony of what the statute requires to be shown by written evidence only, before a suit can be maintained on it.
The deed neither reserves an express lien nor recites the amount of the unpaid consideration from which, according to a statute of this State, an implied lien would have resulted. The appellant now insists that the unwritten contract for a lien should be enforced against the plea of the statute of frauds and perjuries, providing, in effect, that no suit shall be maintained for enforcing a contract for the sale of land, or for an encumbrance on it subjecting it to sale, unless there be a written memorial of the contract as sought to be enforced. But reason, policy, and authority all oppose this assumption.
The philosophy of evidence interdicts, as a general rule, oral testimony inconsistent with written evidence, intrinsically the highest, and presumptively intended by the parties to be the only, evidence of this contract. Policy and justice, however, have, to a qualified extent, relaxed this prudent rule in cases of well-established fraud or mistake in reducing the oral contract to writing. And even in contracts within the scope of the statute, the reason of the exception allows a defendant to prove that a written contract sought to be enforced against him is, through mistake, essentially different from that intended by the contracting parties. And this is not inconsistent with the statute which, intending only to save land from the danger’ of false and suborned testimony, does not provide that a wnitten memorial of sale may not be resisted for mistake when sought to be specifically enforced. Except for the purpose of enforcement, a written contract for land, like every other written contract, may be modified by clear proof of essential mistake. *185 For all defensive purposes, the statute requiring written evidence does not apply, but leaves evidence to the common law tests of competency and effect; and, consequently, no doctrine is either better settled or is more consistent than that which allows a defendant to resist the equity of the extraordinary relief of a specific execution of a written contract for land, by oral proof of the rebutting equity, resulting from a mistake in making the written memorial describe a contract which was, in fact, never made or contemplated. This violates no statute of frauds, and is, therefore, permissible on the general principle which allows oral to contradict written evidence. But the statute excludes that principle whenever a party to a contract for land seeks to enforce an oral agreement against or in lieu of that which, as required, is written. In such a case, the other party may well say, “ however clearly you may seem to prove by oral testimony a contract different from the written memorial, and however conclusively you may thus show that the contract, as written, should not be enforced, yet, nevertheless, there is no written evidence of the contract, which I deny, and which you are seeking to enforce in defiance of the inexorable and conservative statute, which peremptorily forbids the enforcement of any such oral contract.”
Were the only question in such a case the admissibility of oral to contradict written testimony, then certainly both plaintifF and defendant would stand on the same platform, and be entitled to the same privilege. But that is not the decisive question when a party seeks a specific execution of an oral sale of land, or of a lien upon land. The statute then comes in, and, without qualification or exception, inflexiby requires written evidence of the alleged contract, and, in its application to such a case, the statute *186 is fortified by the fact that the parties had prudently reduced to writing a contract essentially different from that sought to be enforced on oral evidence, in opposition to the evidence which they had chosen as the surest test of their rights. But, waiving this consideration, it is evident that superseding the written evidence, leaves the contract without any other than oral evidence, and the status of the parties is precisely what it would have been had there never been any written memorial. This would be the inevitable and utmost effect of proving mistake; and then, if the transmuted contract be enforced, will it not be enforced as a contract merely oral, in the teeth of the statute, and may not the legislative purpose be perverted and altogether frustrated ?
A single example may sufficiently illustrate the right doctrine and the true contradistinctive principle. A, owning two tracts of land of different quality and value, sells to B the tract worth one hundred per cent, the most; but his bond for a title, through either fraud or mistake, clearly describes the least valuable tract, and cannot be so construed as to embrace the tract actually sold. B refusing to pay for the inferior tract,s A sues him for a specific execution of the contract, as falsely written. In resisting A’s asserted equity B may prove the true contract, and defeat the suit; but can he, by retorting a prayer for a specific execution of the oral contract for the better tract, coerce a conveyance of it? The statute is dead unless it says no ; and then for what purpose was it made ? A bonus of a portion of the land might suborn witnesses to testify falsely to the alleged mistake, and thus take from the owner land he never sold. To save from any such perjury and spoliation of real estate, was the only object of the statute; and to deny its availibilty in such a case would virtually nullify it. And here we *187 may see why a plaintiff cannot, by suit, take from the defendant his land without written testimony, and why, at the same time, he cannot, even on written evidence, impose on him land he never actually sold him; and why, therefore, oral proof of mistake may be available for resisting a specific execution of a written contract for land, but can never entitle a plaintiff to a specific execution of any unwritten contract. And it is rather strange that Chancellor Kent once said that he could not see why, if a defendant might resist a specific execution of a written contract for land by oral proof of mistake, a plaintiff might not have a reciprocal right to enforce an oral contract "by proof of mistake in a written memorial; and it may be still stranger that Mr. Story seemed to indorse that unauthoritative saying, never authoritatively ratified or recognized. The true and sure clue to the labjrinth which perplexed those eminent jurists is quite palpable : it is, that the statute of frauds applies to one and does not apply to the other class of cases. This clue shows w^hy, also, a deed purporting an absolute sale may, by oral testimony of mistake, be showm to have been intended only as a mortgage, and why a deed, purporting to be only a mortgage, can never be transformed, by oral proof, into an absolute sale. In the former case the statute of frauds does not prevent resistance to a written contract, but in the latter case it prevents a recovery beyond or against a written contract; and this is perfectly consistent, has never been judicially disregarded even by Story or Kent, and is impregnably established by an overwhelming current of authority, British and American, both judicial and elementary. Any other doctrine is inconsistent, and indefensible on principle.
On this subject, Story, in his Equity Jurisprudence (section 161), says: “It is admitted that a defendant, *188 against whom a specific performance of a written agreement is sought, may insist, by way of answer, upon mistake as a bar to such a bill; because, he may insist on any matter which shows it to be inequitable to grant such relief. A court of equity is not, like a court of law, bound to enforce a written contract; but it may exercise its discretion when a specific performance is sought, and may leave the party to his remedy at law. It will not, therefore, interfere to sustain a bill for a specific performance, and "when it would be against conscience and justice to do so. On the other hand, it seems equally clear that a party may, as plaintiff, have a relief against a written contract by having the same set aside; and canceled or modified, whenever it is founded in a mistake of material facts ; and it would be unconscientious and unjust for the other party to enforce it at law or in equity. But the case intended to be put differs from each of these. It is where the party plaintiff seeks, not to set aside the agreement, but to enforce it when it is rel. formed and varied by the parol evidence. A very strong inclination of opinion has been repeatedly expressed by the English courts not to decree a specific performance in this latter class of cases — that is to say, not to admit parol evidence to establish a mistake in a written agreement, and then to enforce it as varied and established by that evidence. On various occasions, such relief has, under such circumstances, been denied.” And his numerous citations of unquestioned authorities sustain this text.
The same author, in his chapter on Specific Performance (sections 770 and 770a), says: “ The statute has said that no person shall be charged with the execution of an agreement who has not personally or by his agent signed a written agreement. But the statute does not say that, if a written agreement is signed, the same exceptions *189 shall not hold to it as did before the statute. Now, before the statute, if a bill had been brought for a specific performance, and it had appeared that the agreement had been prepared contrary to the intentions of the defendant, he might have resisted the performance of it. The statute has made no alteration in this respect in the situation of the defendant. It does not say that a written agreement shall bind, but only that an unwritten agreement shall not bind.
“ But, in the case of a plaintiff seeking the specific performance of a contract, if it is reduced to writing, courts of equity will not, ordinarily, entertain a bill to decree a specific performance thereof, with variations or additions or new terms, to be made and introduced into it by parol evidence; for, in such a case, the attempt is to enforce a contract partly in writing and partly by parol; and courts of equity deem the writing to be higher proof of the real intentions of the parties than any parol proof can generally be, independently of the objection which arises in many cases under the statute of frauds.”
And, in support of this text, many current decisions by the British courts are cited; and among these, is the judgment of Lord Gottenham in the London and Birmingham Railway Company vs. Winter (1 Craig & Phillips, 57), in which the chancellor said, as to oral variations from a written contract, “ that, in such a case, the contract is not in writing, but in the terms verbally stated to have been the agreement between the parties, and, therefore, refuses specifically to perform such a contract.”
And among the cases cited by the same author, in his chapter on Mistake, is that of Attorney General vs. Sitwell (Young & Coll., 559), in which Baron Alderson said: “I cannot help feeling, that, in the case of an executory agreement, first to reform, and then to decree an execu *190 tion of it, would be virtually to repeal the statute of frauds. It seems to me that the court ought not, in any case, where the mistake is denied or not admitted by the answer, to admit parol evidence, and upon that evidence reform an executory agreement.”
And all other British decisions within the range of our knowledge harmonize with the principle recognized in the foregoing quotations; and we have seen no authoritative American decision essentially different.
Sugdon, in his Treatise on Vendors, collating the British authorities, announces as their unanimous conclusion, that mistake in a wu-itten contract for the sale of land, proved by oral testimony establishing a different contract, “ can only be used as a defense to a bill demanding a specific performance, and is inadmissible as a ground to compel a specific performanceand the only exception he makes is a case of part performance of an unwritten agreement, which, according to the inconsistent doctrine then recognized in England, took the case out of the statute ; and that exception has been invariably repudiated by this court as a virtual repeal of the statute; because, though part performarice may be evidence of some contract, yet it is no proof of the terms or extent of the contract, and, by subornation, men might “ be even proved out of their estates ” in defiance of the letter and policy of the statute. Consequently, this court has always been less inclined than those of England to relax the statute by the application of oral testimony. And this court, therefore, has never adjudged that an oral agreement for selling or encumbering land could, under any circumstances, be specifically enforced when the statute has not been waived; but has often decided otherwise.
In Smith vs. Smith (4 Bibb, 81), the opinion delivered by Chief Justice Boyle clearly implies, that, while oral *191 evidence may resist, it cannot enforce a specific performance of a contract embraced by the statute of frauds respecting sales of land.
In Harrison vs. Talbot (2 Dana, 268) this court adjudged the dismission of Harrison’s cross-bill for reforming, by oral proof, a written memorial of a sale of land to him, and then for a specific enforcement of the agreement as so varied; and the only reason for that judgment was, in the language of the court, “ because he (Harrison) cannot, in the attitude of complainant, compel a specific execution of the contract varied or modified by parol evidence, nor otherwise, than according to the import and effect of the written memorial of the sale.'’'’
Hanly vs. Shrieve (1 Dana, 1) recognizes the same doctrine.
And in Churchill vs. Rogers (3 Mon., 81) the same principle was directly and specifically recognized and applied to a bill by Churchill, charging that a conveyance of land sold to him bjr Rogers did not, through mistake, embrace all' the land actually sold, and praying for an extension of the boundary so as to include the pretermitted land, or for a conveyance of that land.- The opinion of this court, delivered by Chief Justice Boyle, after stating that there was no complaint that the deed as made did not accurately describe, as to identity and quantity, the land conveyed by it, concluded as follows': “ There is indeed evidence in the cause conducing to prove a verbal agreement on the part of Rogers, that the lines might be extended so as to' include the land which is now contended by Churchill ought to have been conveyed; but to sustain the bill and grant Churchill relief on such agreement, would be directly contrary to the letter, as well as the spirit, of the statute against frauds and perjuries.”
*192 The same doctrine has been virtually recognized, arguendo and otherwise, by this court in many cases, and has never, so far as we know or believe, been overruled or questioned by any Kentucky case. The case of Athy vs. McHenry, cited contra, does not allude to the statute, nor intimate that an oral" contract for the sale of land or encumbrance subjecting land to sale, or a written contract altered by oral testimony of sale, or such encumbrance, can be specifically enforced against the vendor when resisted on the ground of the statute. That case only decided that & purchaser should be enjoined from obstructing ventilation and light to the vendor’s house, the enjoyment of which, as an easement, was a part of the consideration of his sale of the adjoining ground, and was reserved by the agreement; but, through inadvertence, was not expressed in the conveyance. That judgment may have been right. The case was not within the statute. The vendee was not seeking to enforce an oral contract for the sale of land against the vendor, but the vendor sought to enjoin his vendee from a nuisance in violation of an oral contract not to commit it.
According to the statute as interpreted, oral evidence was admissible, and, if satisfactory, was sufficient in that case. It was not taking from the vendor any land or service sold by him without a written memorial. It was only enforcing against the vendee a part of the consideration of his purchase; and so far as the statute is concerned, the only question was, whether, in such a case, oral evidence was admissible to supply an omission in the conveyance to the vendee concerning light and air that might not have required a written contract, and which, according to the common law, untouched by the statute, was admissible in such'a case on proof of mistake in the written memorial of the contract of sale by *193 the vendor; and, therefore, the court did not consider or allude to the statute of frauds.
That case of Alhy vs. McHenry, therefore, may be perfectly consistent with the other Kentucky cases, and with the established exposition of the statute of frauds, and certainly does not overrule, or even question, their authority, which seems not only rational and coincident with all the British decisions, but conclusive now on this court after its undeviating recognition for more than sixty years. Nor do we find that the Supreme Court of any .American State has established a conflicting doctrine; and if it had done so, it would not be either authoritative, or even availably argumentative, in this forum, against the limpid volume of its own prescriptive authority, backed by that of England, and certainly by most of the States of our Union. The converse is surely not entitled to the dignified and imposing appellation of “ the American doctrinecertainly not as much so as the doctrine of part performance is the American doctrine.
There are American, and English cases too, in which the alleged mistake or oral agreement not being denied and the statute waived, a specific performance has been, and properly, decreed; and there may be a few sporadic cases in which a divided bench has, for fraud, enforced a contract for the sale or encumbrance of land, as reformed by oral proof indisputable. Such is the case of Depeyster vs. Hasbrouck (1st Kerman's New York Reports). But this, however inconsistent or questionable, is not in the same category of a reformation and enforcement on the ground of mere mistake; and neither in New England nor New York, nor any other American State, has the judiciary authoritatively established the doctrine that, against the plea of the statute, an oral contract or a written *194 contract, essentially varied by oral testimony, on the ground of mistake, can ever be specifically enforced by suit, except on the indefensible ground of part performance. Wherever we find dicta to that effect, we find judicial decisions to the contrary. This is true of the dictum in the case of Hunter's adm’r vs. Bilyeu, &c., in 30th Illinois Reports, in which, nevertheless, the court adjudged against the prayer for specific performance; and in the same State, the same tribunal, in the case of Updicke vs. Armstrong, as well as in other cases, adjudged that “ the statute applies.” All the New England States have likewise so adjudged, and New York has not settled any other doctrine.
The case of Rider vs. Powell (1 Tiffany's New York Reports) has no essential application to the question we are considering. In that case, adjudged by an almost equally divided court, it was decided that Rider, the vendor of land, might, on oral proof of mistake, reform the consideration recited in a mortgage made to secure payment; and it is well settled here and elsewhere that the recital in a deed of the consideration is not conclusive, but may be disproved or qualified by oral testimony. The Kentucky statute of frauds does not require the consideration to be stated in the written memorial of a contract for the sale of land; and we do not judicially know that the Néw York statute differs materially from ours. However this may be, the question of proof of the true consideration depended, in that case, on the common law, unaffected by the statute; and, therefore, the opinion in that case is no authority on the statute of frauds and perjuries. Nor does the case of Gillispie vs. Moore (2 Johns. Ch’y. Reps., 585), or that of Keiselbrock vs. Livingston (4 Ib., 144), adjudge more than the admitted doctrine, that in cases not within the statute of frauds and perju *195 ries, oral evidence may modify a written agreement, and as well for the plaintiff seeking correction and enforcement as for the defendant resisting specific performance. In neither of these cases did Chancellor Kent decide that an oral contract or a written contract for the sale of land, essentially modified by oral testimony, could, if denied, be specifically enforced in defiance of the statute peremptorily declaring that no suit shall be maintained for enforcing a contract for the sale of land unless it be in writing. He said truly that the statute did not apply to the case of Keiselbrock vs. Livingston; and it is equally evident, not only that it did not apply to the case of Gillispie vs. Moore, but that the chancellor’s only object was to settle the then controverted competency of oral evidence to contradict or correct written evidence — a doctrine now universally recognized by enlightened jurists; and all the cases cited in his opinion show nothing more than that oral evidence is admissible, in cases of well-established mistake, to change a written contract; and no one of them intimates an application of that established doctrine of the modern common law to cases in which a plaintiff, on proof of mistake, and of an oral contract essentially different from the written memorial, seeks a specific performance of the oral contract; and to that class of cases alone the statute wisely applies, by its express and inevitable provision against any suit to enforce in invitum an oral agreement for the sale of land, or an encumbrance on land which may subject it to sale, and is, therefore, potentially the same thing.
A failure to discriminate clearly between cases embraced by the statute, and the more comprehensive class of cases unaffected by it, has been the cause of many indiscriminating adjudications and loose dicta on the competency of oral against written evidence, and the reci *196 procity of' its availability to both parties to contracts. But while what has been adjudged and said is generally true, all of it together does not show, or tend to show, except in cases of part performance, that an oral contract for the sale of land can be specifically enforced against a resisting party relying on the statute. And although neither Chancellor Kent nor Justice Story at one time perceived why oral testimony might not be equally competent against written evidence in all contracts and for all parties, yet neither of them ever so adjudged. When they spoke on that subject the British doctrine of part performance, now much regretted in England, had been recognized in most of the American States, and the precise extent of the operation of the statute of frauds and. perjuries had not been authoritatively defined. In that chaotic state of the law it is not at all strange that even those two distinguished jurists were bewildered, like many others, in the twilight. But now the true range of the statute is better defined and understood, and more consistently applied exclusively to suits for the specific performance of oral contracts for the sale of land, according to its clear and express provisions to that effect, and that only. And, excepting cases of part performance, never tolerated in Kentucky, I know of no case, British or American, in which it has been considerately and authoritatively adjudged that an oral contract for a sale of land, or, what is the same thing, an essential alteration of a written memorial of such contract, attempted by oral testimony, can be specifically enforced consistently with the statute when properly relied on. It has never been so adjudged by this court, whose prescriptive authority has been uniformly the other way.. And if that authority, and that also of England and of most of the American States, be now overruled by a majority of this court, *197 against the opinion of the circuit court and this protest, the next and more consistent step in the revolution must be to overrule the Kentucky doctrine in respect to part performance, and thus, by one three-handed blow, strike the statute dead, and leave real estate a prejr to hired perjury. Never before was a solemn writing reformed anywhere on the solitary “ understanding” of one unimpeached witness.
Preferring to stand super antiguas vias, and satisfied also that the old Kentucky way is the right way, and that now blazing a new way, in an unexplored wilderness, must be delusive and unsafe, I cannot concur in reversing the judgment of the circuit court, sustained, as I believe it is, by principle and policy, by British and American authority, and, above all, by the undeviating, and, to us, paramount authority of our own venerable and conservative Commonwealth.
I therefore respectfully, but confidently, submit the foregoing considerations as sufficient grounds to excuse my dissent from the reasoning and judgment of a majority in this pregnant case.