## Rice v. McNeill, et al.

(Decided April 23, 1920.)

### Appeal from Fulton Circuit Court.

1. Deeds—Undue Influence—Mental Capacity.—In an action to set aside a deed upon grounds of mental incapacity and undue influence, where the evidence is so contradictory that some doubt necessarily remains in the mind of the court whichever way it may be decided, the conclusion of the chancellor will be affirmed.

2. Deeds—Undue Influence—Mental Capacity.—Where, contrary to his oft-expressed purpose, and at her urgent and often ill-tempered solicitation, decedent conveyed property to a daughter practically to the exclusion of other children, evidence as to mental incapacity and undue influence being about equally divided, the

conclusion of the chancellor that the deed was procured by undue influence was not be overruled.

W. J. WEBB and B. T. DAVIS for appellant.

F. S. MOORE, DEE McNEILL, ROBBINS & ROBBINS and S. H. CROSSLAND for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1914, A. N. King, then sixty-two years of age, conveyed to his daughter, Mrs. Jessie Rice, the appellant, his home farm of 156 acres, in consideration, as stated in the deed, of $400.00 a year so long as he or his wife lived, and the payment of a mortgage on the land for $1,750.00. As the proof shows the land was at that time worth about $15,000.00, and as the annual payments were less than its rental value, the stated consideration was entirely inadequate. Mr. King died February 25, 1918, and his wife on March 18, 1918. Thereafter this action was instituted by his other daughter, Mrs. Hattie McNeill and the two infant sons of a deceased son, by their guardian, seeking to set aside the deed from Mr. King to his daughter, Jessie Rice, upon the grounds of mental incapacity and undue influence. Upon the latter ground the chancellor set the deed aside and from that judgment Mrs. Rice has prosecuted this appeal.

In addition to the home place conveyed to Mrs. Rice, Mr. King owned another farm, known in the record as the Wilson farm, which according to the evidence was in 1914 worth aproximately $6,000.00. These two farms were all the real estate decedent owned, and at his death his personalty was about equal to his indebtedness.

For more than thirty-five years Mr. King had habitually used intoxicants excessively and to such an extent that a number of witnesses, including Dr. Phelps, who saw him in his last illness, were convinced that he was not of sound mind in December, 1914, when he made the conveyance to his daughter, Mrs. Rice. A large number of witnesses for the other side testify that at that time in their opinion he was of sound mind.

Within a short time before the conveyance was made to Mrs. Rice, Mr. King's oldest son and the latter's wife had died, leaving two small children; his wife had been adjudged a lunatic on January 16, 1914, and when the deed was made was confined in the Hopkinsville asylum and did not sign the deed; on April 29, 1914, his only

other son had committed suicide, and it was two days after the death of this son that Mrs. Rice says her father agreed to make her the deed if she would move upon the home place, which she did in August or September of that year. He did not make her the deed, however, until December 5, 1914, and there is proof that from the time of the death of the son until the deed was made Mrs. Rice was frequently insisting and sometimes ill-temperedly, that her father make the conveyance, which he would refuse to do, saying that he couldn't do that as he wanted to divide his property equally among all of his children. Then, too, there is proof that in July, 1914, Mr. King had agreed with his two daughters, Mrs. Rice and Mrs. McNeill, that he would convey the home place to Mrs. Rice, the Wilson farm to the sons of his deceased son, and that Mrs. Rice and his two grandsons would pay to Mrs. McNeill a sufficient amount to make her equal with them. There is, therefore, much proof to show that it was Mr. King's purpose to divide his property equally among his children, and there is no proof whatever in the record, except in the deed complained of, that he desired to favor one child almost to the exclusion of his other children. If the deed stands Mrs. Rice will receive of her father's estate upon the valuation of same at his death, when the home farm sold for $17,800.00 and the Wilson farm for $7,400.00, approximately $16,000.00 out of the home place and nearly $2,500.00 out of the Wilson place, making a total of nearly $18,500.00, whereas the share of the other daughter and that of the sons of the deceased son will amount to less than $2,500.00 each.

There is some evidence to show that Mrs. Rice was Mr. King's favorite child, and he could, of course, if it was his desire and he had the mental capacity to do so, make this kind of a division of his property, but in view of evidence of his impaired mental condition in 1914 as a result of his long continued excessive use of intoxicants and the many family sorrows of that year, together with the evidence that he made this conveyance of nearly all of his property to one of his two surviving children at her urgent and often ill-tempered solicitation contrary to an oft-expressed purpose to make an equal division of his property among his children, we cannot overrule the chancellor's decision upon these questions of fact, even though the evidence is so contradictory as to create some doubt as to its correctness. As in most

such cases, the decision turns largely upon which set of witnesses is to be believed upon the questions of mental incapacity and undue influence, which are hardly ever susceptible of being conclusively established, and there is nearly always much diversity in the opinions of witnesses and necessarily some doubt in the mind of the court whichever way it may be decided; and upon the evidence in this case we have no more, if as much, doubt of the correctness of the chancellor's conclusion that the deed was procured by undue influence than we would have had he reached a contrary conclusion. This is therefore peculiarly a case where this court must rely upon and affirm the judgment of the chancellor.

Wherefore the judgment is affirmed.