## Carter Oil Company v. Mottley.

(Decided May 20, 1924.)

### Appeal from Allen Circuit Court.

1. Appeal and Error—Credibility of Witnesses Peculiarly for Trial Judge in Equity Cases.—In equity cases, the credibility of witnesses is peculiarly for trial judge, and his judgment on facts is not disturbed where mind is left in doubt as to truth.

2. Alteration of Instruments—Finding of Alteration of Term by Lessee Sustained.—Suspicious appearance of lease as to alteration of term after execution not being satisfactorily explained by lessee, and proof being convincing that contract was for five instead of ten years, judgment holding lease null after expiration of five years cannot be disturbed.

CHARLES A. KREPS, RODES & HARLIN and ARTHUR E. YOUNG for appellant.

OLIVER & DIXON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On September 18, 1916, T. H. Mottley and wife executed to the Carter Oil Company an oil and gas lease. On October 18, 1921, Mottley filed his petition against the Carter Oil Company in which he alleged that the lease was for a period of five years; that as recorded in the county clerk's office it read as a lease for ten years; that the original lease was in the defendant's possession; that he had only leased the land for five years; that the contract expired on September 18, 1921; that the defendant was claiming under it and the record of the lease cast a cloud on his title. He prayed that it be held for naught and that he be declared the true owner of the oil, gas and mineral rights. An answer was filed denying the allegation of the petition. The original lease was produced; proof was taken and on final hearing the circuit court adjudged the plaintiff the relief sought. The defendant appeals.

The proof for the plaintiff is in substance this:

The appellant's agent went to Mottley's house and proposed to lease his land for ten years. He declined this, saying that he would not lease it longer than five years, but that he had given another party an option which would expire the next day and he could make no contract until that option expired. Several days after this he was in Scottsville and the agent called him into the hotel and again proposed to lease his land. He refused to lease it for ten years but agreed to lease it for five years. The agent drew up the lease and he signed it after reading it. He testifies that the lease read for five years when he signed it. His brother, who was present, testifies that he heard the conversation and that it was as stated by appellee, but that he did not read the lease although he saw appellee read it.

The agent testifies in substance that the contract was for ten years and that the lease was made for ten years and so read when it was signed. The original paper has been sent up with the record and we have carefully looked at it under a magnifying glass. It plainly shows that the paper where the word ten is written has been scratched. The gloss of the paper has been rubbed off and the word ten is written over something that has been erased. In the line above, the figure 5 in the same handwriting is written, in giving the deed book and page in which Mottley's deed is recorded. This rubbed space on the paper is about the size occupied by the figure 5 as written in the line above and there is still visible just below the cross mark of the T a dim ink line which would just about correspond with the top mark at the right of the figure 5. There is no question that an erasure has been made here. The agent says that he wrote the word *ten* with his fountain pen when the ink was not flowing and that he shook his pen and then re-wrote it. This would account for the word *ten* being in heavier ink but it does not account for the erasure on the paper which is circular in form and large enough to cover the figure 5.

In equity cases the credibility of the witnesses is peculiarly for the circuit judge, and his judgment on the facts is not disturbed in this court where the mind is left in doubt as to the truth. The rule as to alterations is thus stated in 1 Greenleaf on Evidence, section 564:

"And, generally speaking, if nothing appears to the contrary, the alteration will be presumed to

be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done as well as that of the person by whom, and the intent with which, the alteration was made, as matters of fact, to be ultimately found by the jury upon proofs to be adduced by the party offering the instrument in evidence.''

The appellee's testimony is positive that the paper has been altered since he signed it. The paper when produced shows plainly that something written on it has been erased and the word ten written over it. The word ten is written in heavier ink than the writing just above or just below. The party offering the instrument has not satisfactorily accounted for the mutilation of the paper. It cannot reasonably have been caused by the point of a fountain pen which lacked ink; and this is the only explanation offered.

In 2 Corpus Juris, p. 1276, the rule that an alteration will be presumed to be made before the execution of the instrument is thus qualified:

"Where the alteration is suspicious in itself this rule does not obtain, and the presumption of alteration before execution will be overcome and the burden will rest upon the party offering the instrument to explain it.'

The suspicious appearance of the paper not being satisfactorily explained and the proof being convincing that the contract was for a lease for only five years the judgment of the circuit court adjudging the plaintiff the relief sought cannot be disturbed.

Judgment affirmed.