# Hale et ux. v. Hubbard.

(Decided Nov. 9, 1937.)

PAT RANKIN for appellants.

P. M. McROBERTS and E. G. BAXTER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Affirming.

In March, 1930, the appellants purchased of appellee a small farm situated in Lincoln county, Ky., for which they agreed to pay $2,250. Some time previous to the sale of the land appellee had borrowed $350 of the Waynesburg Deposit Bank, the payment of which he secured by a mortgage on the land which he conveyed to appellants and, as a part of the consideration, appellants assumed the payment of the note and mortgage. Thereafter the bank became insolvent and was placed in the hands of J. R. Dorman, banking commissioner for the state of Kentucky, and Dorman, as banking commissioner, brought suit against appellants and appellee to foreclose the mortgage lien against the land.

Appellants filed their cross-petition against their vendor, the appellee, in which they alleged that when they purchased the land of appellee he represented to them that the tract of land contained 62 acres and they purchased it upon his representation that there were 62 acres in the boundary, and upon such representation and understanding they assumed payment of the mortgage to the Waynesburg Bank as set out in the petition of the banking commissioner, and that they further executed to appellee their two promissory notes for $1,000 and $9,000, respectively. They further alleged that, pursuant to an application made by them to the Federal Land Bank in Louisville for a loan on said boundary of land, they had it surveyed and according to said survey there are only 31½ acres of land; that the representation of appellee that there were 62½ acres of land in the boundary was a material factor in their purchase and, had they known that said representation was untrue, and the said boundary of land contained only 31½ acres, they would not have paid or agreed to have paid the sum of $2,250 for the land, and that by reason of the deficiency of 31 acres they are damaged in the sum of $1,125, and prayed to recover of appellee that sum.

550

Appellee filed his answer to the cross-petition denying that he represented to appellants that the boundary of land conveyed contained 62½ acres or any other definitely fixed number of acres, and further pleaded that he sold the land to appellant by the boundary but not the acre, and that the deed contained the following provision:

"The above tracts are conveyed by the boundary and not by the acre."

By subsequent pleadings issue joined on the question of whether the conveyance of the land by appellee to appellants was by the boundary or by the acre. The evidence was taken and the chancellor found and adjudged that the conveyance was by the boundary and denied appellants the relief sought, and to reverse that judgment appellants have prosecuted this appeal.

Appellant L. R. Hale testified that appellee came to his place when he lived in Pulaski county and he, appellant, had been talking about buying a farm, and appellee said that he would sell him his farm and he asked appellee how many acres he had, and he said "62 acres or close to that, and he said he had never had it surveyed and was not positive, but that his deed called for 62 acres." He was asked if at any other time appellee represented to him that the boundary of land contained 62 acres, and he said he didn't remember exactly but he heard him make that statement to other people. Appellant admitted that he had been to appellee's place and had seen the land in question a number of times, and when they were discussing the trade he and appellee went over a part of the land. He further testified as follows:

"Q. Did he look over the land with you? A. We started to look over it—we went out through the middle of it into a big field and he said 'Well there ain't no use going and looking on down here around the creek front, I have already showed you land worth more than you are paying me for it,' and we come back."

"Q. That's as much as you looked over it? A. No, I had been over it before, but that was all after I was thinking about buying it."

Appellant admitted that he was present when the deed was prepared, and appellee suggested that they

put in the deed that the sale was by the boundary and not by the acre, to which he made no objections. He was asked when he first discovered that the land he purchased did not contain 62½ acres, and he said that in about two months after he purchased it and began working over it he saw that there was not that much. It does not appear, however, that appellant made any complaint or sought any correction of the alleged shortage of the acreage of the land until July, 1934, when he made application to the Federal Land Bank of Louisville for a loan on the land and upon a survey of the land it was ascertained that it contained only 31½ acres, and after the survey was made appellant still made no complaint to appellee until the Federal Land Bank threatened to reduce his loan because his farm was so small, and he still sought no relief until the Waynesburg Bank brought its action seeking to enforce its lien against the land, which was about four years after he had purchased the land, and he admitted that in two months after he had purchased the land he discovered that it did not contain 62 acres.

The appellant Mrs. Hale's testimony was about the same as that of her husband and tended to corroborate his statement relating to the alleged representations of appellee that the land contained 62 acres.

J. R. Fletcher testified that when he heard that appellant was about to buy appellee's land he tried to get to appellant to tell him not to buy the farm because it did not contain the acreage that it was supposed to contain. He also said that soon after appellee had bought the farm, he, appellee, came to him and told him that, if he doubted the farm contained the number of acres it was supposed to contain, to say nothing about it to appellant, "because it might bust up the trade." Appellee denies making that statement. Squire Watts testified that in a conversation with appellee, he, appellee, admitted that after he had purchased the land of one Burleson and had worked over it a short while he was satisfied that it was short and "thought about going back on his grantor, but he never liked that law much and just decided to sell it to some other man and deed it in shape that they couldn't come back on him." Appellee denies making that statement to Watts.

The deed in question calls for a boundary in two tracts, one of 15½ acres, the other of 55 acres, with an

exclusion of 8 acres from the latter theretofore sold to another, leaving 47 acres in the latter tract, plus 15½ acres in the former, totaling 62½ acres. However, the deed expressly recites that the sale was by the boundary and not by the acre.

The chancellor rendered an opinion which is filed with the record in which he reviews the evidence and circumstances of the whole transaction between the parties. We quote in part from that opinion:

"It is clear from the testimony both of plaintiffs and of Hubbard (appellee) that during the negotiations as to this purchase, Hubbard told the plaintiffs his deed called for 62 acres; that he had never had it surveyed, and did not know the acreage. L. R. Hale (appellant) looked over the place before closing the deal. The purchasers took the farm at the lump sum of $2,250.00, this including a cow at the price of $50.00. The recital in the deed that the sale was by the boundary, not by the acre, was inserted at the request of Hubbard. Both L. R. Hale and his wife were then present, and each stated that no objection was made to this being put in the deed. Mrs. Hale said Hubbard, when this was done, remarked that 'it might save trouble.'

"It seems to me that Hubbard, who had been in possession of the farm for three years before the sale, probably was aware that the place was short of the acreage called for in the deed under which he held from Burleson. The testimony of Mr. J. R. Fletcher, who is a disinterested witness, to the effect that Hubbard said to him, while the negotiations for the sale were pending, if he, Fletcher, doubted there being the number of acres in the farm, to say nothing about it, that it might break up the trade, shows Hubbard realized there was not as much land as the deed called for. But the proposition is, do these things, notwithstanding the circumstances surrounding the negotiations, and the conduct of the parties, before and after it was made, showing it was a sale by the boundary, irrespective of the acreage, mark the trade as one where the so called 10% rule applies? If this sale is one falling within the third classification stated in Harrison v. Talbot, 2 Dana 258, that rule governs. Rust v. Carpenter, 158 Ky. 672, 166 S. W.

180; Hunter v. Keightley, 184 Ky. 835, 213 S. W. 201; Chilton v. Head, 193 Ky. 768, 237 S. W. 422.

"Looking to the circumstances and conduct of the parties, we find these facts established:

"L. R. Hale had been over this farm before he and Hubbard began negotiations about the sale of the farm. Hubbard was an uncle by marriage of Mrs. Hale, and she and her husband had visited him, and L. R. Hale had been over the place, but not with a view of purchasing it. On the morning the trade was closed, Hubbard took Hale out on the farm and showed him the corners, but not all over the place. According to Hale, he was shown some of the corners; according to Hubbard, he showed him, he thought, every corner. As to this Hale testified:

"'We started to look over it—we went out through the middle of it into a big field, and he (Hubbard) said "Well, there ain't no use going and looking on down here around the creek front. I have already showed you land worth more than you are paying me for it," and we come back.'

"And on cross examination he testified to this: 'He said, "I have already showed you more land, or land worth more than what you are paying me for it."'

"He was asked if, from where he was on that occasion, he could see all of the farm, and he replied: 'No, not all of it—from where I was I could see most of it, but not all.'

"Hubbard testified with regard to his showing Hale the farm: 'Well, we went around the land I think I showed him every corner that was in my land, and then we walked up to the barn. I asked him what he thought about it and he said it was all right.'

"The trade was then closed; they came to Stanford to have the deed drawn, and while it was being written, Hubbard directed that there should be put in the deed the recital that the sale was by the boundary, not by the acre. This is his version of it:

"'We told the man who made the deed. I told.

him the reason I was selling it, that way, was that I had trouble with making up a shortage on a farm that was sold several years ago and I ain't a sellin' this for fraud or cheat and didn't want any trouble hereafter and am selling it by the boundary and not by the acre.'

"L. R. Hale testified that when Hubbard did this, he asked him if there wasn't 62 acres in the farm, that he replied he was not sure, but that it was listed with the assessor as containing 56 acres; that he did not object to the clause being inserted. Hubbard said that he made no such statement, nor was he asked as to there being 62 acres. Mrs. Hale testified that when Hubbard directed this clause to be put in the deed, he said it might save trouble, and that she made no objection.

"This sale was in March 1930, and possession was given the Hales, and L. R. Hale testified that within two months thereafter he became convinced there were not 62 acres in the farm; but he made no mention of this to Hubbard. He made no complaint of the matter until, in the summer of 1934, when he was trying to borrow some money on the farm, he had it surveyed, and the survey ran out 31½ acres. In reply to the question of why he had never before made any complaint to Hubbard, he said:

" 'I thought when that clause was in the deed, "sold by the boundary and not by the acre" that there was no use. I thought that settled it until I had this survey done and the Federal Land Bank reduced the loan, and I come here to Kelly Francis to sign up the necessary papers to get it and I showed him that deed, and he said make him show up the acres or not pay for it. I showed him the clause in the deed and he said that didn't have nothing to do with it.' "

The chancellor also reviewed the law applicable to such transactions as are here involved, citing authorities and reasons therefor. We further quote from the opinion of the chancellor:

"In Sanders v. Lindsey, 204 Ky. 57, 263 S. W. 718, Lindsey sold to Sanders a farm. Sanders, in the suit to recover for shortage claimed that Lind-

sey had represented to him the farm contained at least 300 acres, though not sure of the exact number; that he relied upon this in purchasing; that in fact the farm contained only 225 acres. The deed contained a clause that the land was sold by the boundary, not by the acre. In holding he could not recover, and referring to that clause in the deed, the court said:

" 'These words must have been inserted for some reason; they can not be rejected as meaningless. The natural meaning is that the boundary is sold for the consideration named. This conclusion is fortified by the fact that there is not a course or distance given in the deed. The vendee well knew and had known it for years. It had never been surveyed since the vendor had it and other tracts had been cut off from the original survey. The vendee accepted the deed well knowing its terms. Some time after the tract was bought by him, he was on a trade with Tilford DuVall, by which DuVall was about to buy the land from him, and when this trade came up the deficiency in the quantity came to light. The witnesses testified that appellant (vendee) then said: "That don't make any difference. I bought by the boundary and I sold by the boundary. I ain't got no recourse on Tom (Lindsey) and Tilford ain't got no recourse on me." While he denies saying this, we think this is the natural construction of his deed, and that he is bound by it.'

"While in this case the deed describes the land particularly, and there is no testimony that the Hales or either of them made an express admission in words about buying by the boundary— and that admission was denied by the vendee there —there is the admission by subsequent conduct to which I have referred, and the conduct of the vendees both before and contemporaneous with the execution of the deed, all fortifying this construction of the present deed."

The rules enunciated in the case of **Harrison v. Talbot**, 2 Dana 258, 266 are:

(1) Sales strictly by boundary, without reference to acreage.

(2) Sales of like kind, where the acreage is used merely as descriptive.

(3) Sales in gross, where from the conduct of the parties, conversation, locality, value and price, the parties contemplated only a reasonable variance from the acreage announced in the deed.

(4) Sales though called sales in gross, are in fact sales by the acre, and so understood by the parties.

Cases of this kind are governed by the facts and circumstances of each particular case. The chancellor found from the facts and attendant circumstances, chief among which was the conduct of appellants after their purchase of the land in their long delay in seeking relief, that this transaction is governed by rule 2 in Harrison v. Talbot, supra, namely: that the sale of the land was by the boundary, and the acreage is used merely as descriptive.

The evidence is conflicting and so nearly equally divided as to leave the truth of it in doubt, and it is the established rule that in such cases the finding of fact by the chancellor will not be disturbed by this court. Rice v. McNeill et al., 187 Ky. 726, 220 S. W. 724; Carter Oil Company v. Mottley, 203 Ky. 281, 262 S. W. 264.

Upon review of the record we find that the evidence is sufficient to support the finding of fact and judgment of the chancellor.

Judgment affirmed.