# McGeorge et al. v. White.

Oct. 8, 1943.

A. D. Hall and A. T. W. Manning for appellants.

Roy W. House for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This is a suit to compel a purchaser to accept a deed and specifically perform his contract. The court decided it in favor of the defendant, including judgment against the plaintiff for $250 which he had paid on the purchase price. The only question we need to consider is whether there was a mutual assent or meeting of the minds sufficient to form a contract.

Some months previously, while on a visit in the neighborhood, the appellee, Hugh White, who lived in Florida, suggested to the appellant, Mrs. Ethel McGeorge, that he would like to buy a parcel of land which she owned and which had been a part of her father's farm adjoining or near White's old home place. On January 1, 1941, she wrote him asking what he would "give an acre" for it. He replied that he would give her $50 an acre, and added, "I understand that there are 10 acres in it." She accepted the offer, writing, "I have no idea how many acres I have but I guess there is 10 or more acres." She stated that any one he might select "to run it" would be acceptable to her. White promptly sent a check for $250, with the promise to pay the balance upon receipt of the deed, and suggested that Jess Wilson could give a close estimate of the acreage. Wilson made some measurement or rough survey, and Mrs. McGeorge sent a deed and plat to White. These showed the parcel to contain 17 1/3 acres. White promptly objected, questioning the acreage, and called attention to the fact that he had written that he understood it to contain only 10 acres and she had agreed. He suggested another person to "step it" as a check on Wilson's measurements and asked what Mrs. McGeorge would accept

to cancel the transaction or as a lump sum for the parcel. She responded that she did not know how many acres there were and refused to agree to a cancellation. White reminded Mrs. McGeorge of her representation that the parcel contained 10 acres and submitted certain facts justifying his assumption that she knew within an acre or two how many acres there were. He insisted that an offer of $500 for the whole was a generous one and that he had been deceived by the contention that the parcel contained 17 1/3 acres. He offered $100 for a rescission or $600 for the tract provided it contained more than 15 acres. Subsequent correspondence is merely argumentative. Mrs. McGeorge insisted that White accept the deed and pay her for 17 1/3 acres at the rate of $50 an acre, or a total of $866.67, which he refused to do. This suit followed.

To consummate a binding contract for the sale of land, as in the case of other contracts, there must be a meeting of the minds of the parties or mutual assent to the same thing, and all material terms and conditions of the contract, including a certainty of the subject matter, must be agreed on. 27 R. C. L. 323. Subject to some qualifications not applicable here, equity will afford relief by rescission to either party if there was a mutual mistake, based upon ignorance or misapprehension, as to a material thing connected with the subject matter or essential in the inducement to or formation of the contract or involving the entire consideration. The mistake is so classified if the contract would not have been made had the truth been known to the parties. In relation to a sale and purchase of land a mistake as to the quantity is deemed equivalent to a mistake in the existence of a material part of the subject of the contract and an injured party is entitled to relief. 66 C. J. 560; 27 R. C. L. 354, 645. "If, in a contract of sale the quantity of the realty to be conveyed is indicated by a unit of area, as by the acre, a marked excess or deficiency in the quantity stipulated for constitutes a material mistake within this rule, even though such terms as 'more or less' or 'about' are used with reference to the land, those terms being used in such contracts to cover only very small variations; but, since it is very difficult, if not impossible, to ascertain the quantity of a tract with perfect accuracy, a slight excess or deficiency does not, even in such a sale, affect the validity of the contract." 66 C. J. 561.

In the leading case of Harrison v. Talbot, 32 Ky. 258, 2 Dana 258, Chief Justice Robertson made a classification of the sales of land in gross and declared the law applicable where it is developed there is a surplus or deficit in the quantity believed by the parties to be contained in the tract. The third and fourth classes are thus described: "Third—Sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate, or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency. Fourth—Sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties."

Concerning sales of either kind, it was held that an unreasonable surplus or deficit entitled the injured party to equitable relief unless he has by his conduct waived or forfeited his equity. The facts of that case are that in March, 1829, Burr Harrison sold and covenanted to convey to Daniel Talbot "all that tract or parcel of land," near Bardstown, "on which Col. Andrew Hynes died," describing it by its boundary, and designating it as containing four hundred acres; and Talbot covenanted to pay six thousand dollars, "for and in full consideration for the absolute purchase of the said tract or parcel of land." It was ascertained that the tract contained 490 acres and the purchaser brought suit to compel the conveyance to him of the entire tract for the stipulated price of $6,000. The seller insisted that the sale was by acre, at $15 an acre, and that according to family tradition it had been called one of 400 acres and had been so estimated. He proposed to make title to 400 acres for the agreed price, or to 490 acres for a proportionate additional payment. The court placed the contract in the third class; that is, one in gross which the parties did not contemplate or intend to risk more than a reasonable surplus or deficit, and declined to decree specific performance by the vendor because the excess of 90 acres over the 400 specified was too great. However, Talbot was permitted, if he desired, to elect to accept the seller's alternative propositions.

The situation is the reverse in this case where it is the seller who seeks to compel the purchaser to perform

the contract. Manifestly, the principle is the same. Since the contract in the instant case called for a price per acre rather than a lump sum and a survey was contemplated, it should probably be placed in the fourth classification above described, i. e., as a sale denominated as one in gross but which was in fact by the acre. But whether it is that or the third class, an excess of 73 per cent over the estimated acreage is too much. The inevitable conclusion is that there was no meeting of the minds on this material part of the subject matter of the contract. The transaction being executory, it is peculiarly one for the interposition of equity to rescind and restore the parties to their original status.

The judgment is, therefore, affirmed.

Whole Court sitting.