**Henry T. BUSH and Ivy D. Bush, his wife, Appellants,**

v.

**James Larry PUTTY, Jr. and Joyce Putty, his wife, Appellees.**

Court of Appeals of Kentucky.

May 26, 1978.

Paul K. Turner, Turner, Dixon, Kemp & Fletcher, Hopkinsville, for appellants.

Ben B. Wright, Jr., Wright, Wright & Whitfield, Hopkinsville, for appellees.

Before HOWERTON, LESTER and REYNOLDS, JJ.

HOWERTON, Judge.

The appellees (hereinafter referred to as Putty) sued appellants (hereinafter referred to as Bush) for specific performance of a contract to convey a farm, and for an abatement of a portion of the purchase price. Bush answered the complaint and asked that Putty either perform the contract at the agreed purchase price or, in the alternative, that the contract be rescinded, with the $100 down payment to be returned to Putty.

On January 8, 1977, the Christian Circuit Court directed Bush to convey his farm to Putty for an abated purchase price of $76,-320.00. It is from that judgment that this appeal is taken.

Bush, who was 83 years old at the time of executing the agreement on February 27, 1976, had owned the farm since October, 1963. Putty had rented the farm in question from Bush, from 1971 until January, 1976. The parties reached an oral agreement whereby Putty would purchase the farm for $90,000.00. Putty had his attorney draft a contract of sale, which was signed by the parties on February 27, 1976.

The contract recited the fact that, "the seller being this day the owner of approximately 125 to 130 acres of land. . . . " The former deed described the land as consisting of five parcels totaling approximately 130 acres. If the five parcels described in the deed were computed separately, the total acreage amounted to 125.68 acres. The contract further provided that in the event a survey of the farm was required, the cost would be divided equally between the seller and the purchaser.

The property was surveyed, and the actual area of the farm measured 105.99 acres, a

variance of approximately 18 percent. Putty refused to pay the agreed price of $90,000.00, and offered Bush the sum of $73,400.00.

There was never any discussion of a cost per acre, and the record reveals that there was no discussion of acreage until the contract was signed. There is no indication of any fraud or deceit on the part of Bush or Putty, and both parties were familiar with the farm as a whole and its boundaries, although neither party knew the exact acreage contained within the boundary.

The case was tried before the court by deposition. The court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

\* \* \* \* \* \*

2. The subject property was represented by defendants to be approximately 125 to 130 acres.

3. The property, by a survey, contained 105.99 acres.

4. Plaintiffs lost the opportunity to farm the property during 1976, suffered losses from nonuse of equipment and fertilizer purchased for this property, and were unable to purchase other property during the period that this sale was pending.

5. Plaintiffs believed and relied upon defendants' representation that the farm contained 130 acres, more or less, and was entitled to rely upon same.

6. Plaintiffs did not purchase the property without concern for the acreage therein.

### CONCLUSIONS OF LAW

1. Plaintiffs are entitled to relief in equity where the shortage of acreage in a land contract exceeds 10 percent (10%), as it does in this case.

2. The plaintiffs are entitled to specific performance of the contract with an abatement of purchase price, based on the reduced number of acres in the farm.

3. Defendants have not established the defenses of estoppel, rescission or defendants' "Counterclaim" for damages.

The judgment ordered Bush to convey the farm for the sum of $76,320.00.

■ We have reviewed the depositions and the entire record, and we have some factual differences with the trial court, although most of our differences relate to facts in the record which were omitted in the findings by the court. The differences and omissions appear to be clearly erroneous and significant in that they formed the basis for the court's conclusions and ultimate judgment. We also have differences with the conclusions reached by the trial court. We would point out that where a case is tried entirely by deposition, the appellate court is in as good a position to judge the credibility of witnesses as is the trial court. We may, therefore, make some independent evaluation of the evidence. *Burchett v. Jones*, Ky., 291 S.W.2d 32 (1956). CR 52.01.

Bush argues that the correct remedy for this case was rescission of the contract based upon the principle of mistake, as was done in *McGeorge v. White*, 295 Ky. 367, 174 S.W.2d 532 (1934). Bush also argues that specific performance with an abatement of purchase price is not an authorized or proper remedy in Kentucky.

We conclude that this contract should have been rescinded. As to the question of whether or not specific performance with an abatement of purchase price is a proper remedy in Kentucky, we only conclude that the remedy is not appropriate for the facts in this case.

We agree with the finding by the trial court that the property was represented by Bush to be approximately 125 to 130 acres. It must be noted, however, that this was the description contained in Bush's deed. We would also agree that Putty was somewhat concerned about the acreage he would purchase, just as anyone would be. But, this case is unique in the fact that Putty had been in possession of the farm for five years before the agreement was made by Bush to sell and Putty to buy the farm for $90,000.00. Putty knew as well as Bush what he was acquiring for the agreed purchase price.

We would also agree with the finding that the actual acreage contained in the farm was 105.99 acres. This constitutes a substantial difference and considerably more than a ten percent variance. We fail to find any serious consequence from Finding # 4 by the trial court, and note that the trial court omitted the fact that Putty could have leased the farm from Bush during 1976 and carried out a farming operation.

The trial court concluded that Putty was entitled to relief because the shortage of acreage exceeded ten percent, and also that Putty was entitled to specific performance with an abatement of the purchase price based on the reduced number of acres. The remedy of specific performance is well settled in cases involving the sale of land. We have been bombarded with authority in the briefs from both sides indicating that specific performance with an abatement of the purchase price is available in a narrow line of cases in Kentucky, and that the remedy is also supported by substantial secondary authority and cases from other jurisdictions. Apparently, most cases do not allow an abatement in price for the buyer or seller, if the variance is within ten percent. If specific performance is ordered, a modification in price is permitted when the variance exceeds ten percent, but we cannot find any Kentucky authority for granting this remedy when the modification would be substantial and when no fraud or deceit is involved. The most common situation occurs when the seller is attempting to force the buyer to carry out a contract with less land than the buyer bargained for.

Some rules have been established for contracts for the sale of a gross amount of land, as was described in *Harrison v. Talbot*, 32 Ky. 258, 2 Dana 258 (1834). At p. 266, the court describes four types of gross sales, and concludes that either of the first two types should not be modified, while an unreasonable surplus or deficit may entitle the injured party to equitable relief in either the third or fourth situation. The second and third classes are described in *Harrison, supra*, at 266, as follows:

\* \* \* \* \* \*

Second—Sales of the like kind, in which though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how-much-soever it might exceed or fall short of that which was mentioned in the contract.

Third—Sales in which it is evident from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency.

The trial court apparently found the third category to be applicable, and then applied the theory of the ten percent rule in order to grant the specific performance with a relief from the agreed purchase price. This may be the correct category for this sale, but other factors make the relief unconscionable, which is why we conclude that rescission of the contract is a more suitable and just solution for this controversy.

We would point out that in *Harrison, supra*, the situation fell within the the third classification, but specific performance at an adjusted price was denied. The opinion of the court reads at p. 268:

We cannot resist the conclusion, that a court of conscience called on to assert its extraordinary equitable discretion, in coercing a specific execution, cannot, consistently with justice, principle or authority, grant the prayer of the appellee.

The error in *Harrison, supra*, was approximately twenty-two percent. The situation also involved an excess amount of acreage rather than a deficiency, and it permitted the buyer to either accept the proposition of the seller to either convey an amount smaller than the entire tract, or to convey the entire tract at an increased price. The court left the solution up to the parties.

Although there are several distinctions to be made between the case, *sub judice*, and the case of *McGeorge v. White, supra*, the *McGeorge* case did direct a rescission of a contract based upon the principle of mutual mistake, in that there was never an agreement as to the exact number of acres. More correctly, it might have been said that there never was a contract.

17A C.J.S. *Contracts* § 418(2) provides that:

> . . . [A] mutual mistake as to a material fact, and in some incidences, a unilateral mistake, entitles the party affected thereby to rescind the contract unless the contract has already been executed and injustice to the other party would result.

■ We have before us a serious mistake which was mutual in the sense that both parties were thoroughly familiar with the farm to be bought and sold. The mistake was one of fact, in that the state of mind of both parties was not in accord with the reality of the actual number of acres contained in the farm. There is no evidence of any fraud or deceit on the part of Bush or Putty, and the mistake was made by Bush through the exercise of ordinary care under the circumstances, although it is always preferable to have property surveyed, which he never did. The mistake is enough to deny enforcement, since we could conclude that no contract was ever made.

■ Bush agreed to sell his farm for $90,000.00. Putty agreed to buy the farm for $90,000.00 and knew the boundaries of his intended purchase, although neither party knew the exact quantity of the tract in number of acres. To force Bush to sell his farm for $76,320.00 is as unconscionable as it would be to force Putty to buy the farm at $90,000.00, or, more specifically, to force Putty to buy the farm for $105,000.00, if a survey revealed that it contained approximately 150 acres.

■ When the parties can be returned to the status quo, the best remedy is rescission. The contract in this case was executory, and rescission provides a more just set-tlement for both parties, as in *McGeorge, supra*. If Putty can prove any actual damages, he might find a remedy in another action. No funds have yet been transferred, and possession has not changed. Both parties can be restored to their prior positions with little difficulty.

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded with directions to enter judgment consistent with this opinion.

All concur.