Robert M. STAFFORD, Appellant,

v.

Etta STAFFORD and Nick L. Pearl, Appellees.

Court of Appeals of Kentucky.

June 19, 1981.

William P. Mulloy, Louisville, for appellant.

Nick L. Pearl, Radcliff, for appellees.

Before LESTER, McDONALD and REYNOLDS, JJ.

McDONALD, Judge:

In this case the appellant questions the trial court's findings of fact which supported the court's judgment awarding custody and maintenance to the appellee wife, and attorney's fee to appellee Nick L. Pearl.

Pursuant to CR 43.04, the case was tried by deposition.[1] The trial court made the following single finding of fact concerning the custody issue:

6. Some problems have existed between the daughters and the mother, but by reason of the evidence in the case and the fact that the father is in full time military service and the two daughters need some counseling and guidance by a mother, the best interests of the two daughters would be served by granting their custody to their mother.

The evidence contained in the depositions is essentially as follows:

*Testimony of Betty Ann Stafford and Teresa Rena Stafford.* These are the sixteen- and twelve-year-old daughters of the

---

1. We seriously question the judicial appropriateness of trying a child custody issue by deposition under CR 43.04; however, since no objection to the procedure was made we are not called upon to address the issue.

parties. They reside on the post at Ft. Knox with their mother exclusively since the entry of a temporary custody order. Both wish to be placed in the custody of their father. Each described deplorable conditions with their mother, but a loving relationship with their father. Betty Ann related that she hated her mother and had felt that way since she was 14 years old. The home scene with the mother portrayed the mother's violent behavior, seclusion from the family, excessive taking of pills, constant fighting and turmoil, and inordinate sanitary rules such as keeping her own food separated from everyone else's in the refrigerator because of germs; the complaints go on and on. Neither girl felt that the mother loved them, but only wanted them in order to keep their father.

*Testimony of Ann Wilson, Patricia Lewis, and Ann Schmidt.* They are, respectively, a social worker for Ireland Community Services, a guidance counselor for Ft. Knox High School, and a child psychologist at Ireland Army Hospital. They were called in to investigate the home conditions of this family, mostly from independent sources. They were in concert with one another in their findings that the home circumstances were in turmoil and the children were suffering under the sole care of their mother. They uniformly recommended that custody be placed with the appellant because he was more stable and better equipped for the care of the children.

*Testimony of Appellant Robert M. Stafford.* Mr. Stafford is thirty-nine years of age with twenty years in the U. S. Army, a sergeant major, E–9 rank. His take-home pay is $1,313 per month. He claims to be the disciplinarian in the family. According to him, the breakdown in the marriage was a gradual thing. He asserted that the appellee was unable to manage money and was an impulsive clothes buyer for herself. She continually nagged about his drinking, even when he did not drink. He claimed he never drank to an excess. He related several episodes in which the appellee would slap him and pull his hair in front of the children, but stated that he retaliated only one time by striking her. He described a daily routine of the appellee using various drugs.

Expressing a strong desire to have custody, he was confident he could take care of the children.

*Testimony of Appellee Etta Rose Stafford.* She is thirty-eight years of age, having married the appellant on March 31, 1961, in Dillon, South Carolina. The marriage produced two children. Etta Rose possesses only a ninth grade education and minimal experience in factory and waitress-type work. Since the birth of the first child she has not worked outside the home. She testified about her love for the children, and that she has done the things for them as mothers do for children. She complained bitterly of the appellant's drinking and staying away from the home, and constantly "putting her down" before the children. She complained about the appellant's failure to let her have any money to operate the house with, and rebutted the allegations about her excessive sanitary habits on the basis that she was neat. She said the appellant drilled the children into thinking she did not love them and encouraged them to ridicule her. She testified about physical abuse from the appellant on a frequent basis.

APPELLANT MAINTAINS THAT THE TRIAL COURT'S AWARD OF CUSTODY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND NOT IN THE "BEST INTERESTS" OF THE CHILDREN. WE AGREE.

In a trial without a jury the findings of a trial court, under CR 52.01, if supported by sufficient evidence, cannot be set aside unless the findings are found to be "clearly erroneous." The reason for this rule is twofold: (1) The trial court had the opportunity to judge the credibility of the witnesses, and (2) without the "clearly erroneous" rule, actions would be tried anew upon appeal. The cases are plentiful in support of this rule. *See Barnes v. Barnes,* Ky., 458 S.W.2d 772 (1970), *Stephanski v. Stephanski,* Ky., 473 S.W.2d 806 (1971), and *Taylor v. Taylor,* Ky., 591 S.W.2d 369 (1979).

■ However, as in this case, the "clearly erroneous" rule does not apply when the trial court has the proof submitted by depositions under CR 43.04 because the trial court cannot judge the credibility of witnesses it did not observe. In *Burchett v. Jones*, Ky., 291 S.W.2d 32 (1956), our Supreme Court articulated:

The case was tried entirely on depositions. While CR 52.01 requires that due regard be given the opportunity of the trial court to judge the credibility of the witnesses, the form of the evidence is significant. (Case cited.) . . . the trial court did not have an opportunity to observe the demeanor of the witnesses who gave oral testimony. Under the circumstances, we believe we are in as advantageous a position to pass upon credibility as was the trial court and may properly evaluate the evidence.

The reasoning in *Burchett* was followed by this court in *Bush v. Putty*, Ky.App., 566 S.W.2d 819 (1978). Our task now is to evaluate the evidence in the record without the limitations of the "clearly erroneous" rule.

■ First, let us comment that in a trial without a jury conducted pursuant to CR 52.01, the trial court is required to find those facts which are raised in the pleadings or those facts which are mandated to be considered by statute, whichever the case may be.

In custody cases the legislature, through K.R.S. 403.270(1), states criteria the trial court shall consider in making its determination of an award of custody. The ultimate or conclusory fact to be found is a determination of the "best interests of the child." However, before that factual conclusion can be reached the court is to consider all relevant factors including those specifically enumerated in the statute. We, as an appellate court, are not unmindful that the most burdensome and frustrating work of the trial court is its task in decision making associated with nonjury trials under CR 52.01 and that the bulk of this burden is in family law cases. However, our Supreme Court, in its rule making and super-

visory capacity, has placed the utmost trust and responsibility in the trial courts by adopting CR 52.01. The rule states that the facts shall be found "specifically." The rule is mandatory on the trial courts. We cite *Fleming v. Rife*, Ky., 328 S.W.2d 151 (1959) and *Standard Farm Stores v. Dixon*, Ky., 339 S.W.2d 440 (1960).

The cornerstone of CR 52.01 is the trial court's findings of fact. It aids the reviewing court by giving it a clear understanding of the grounds and basis of the trial court's judgment, and its judgment will usually not be disturbed on appeal if there is evidence in the record to support the findings. The Supreme Court of the United States, emphasizing the importance of the trial court fact-finding function, said that judges, " . . . will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it." *U.S. v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964). In the findings of fact herein, the trial court evidently made an assumption when it stated, " . . . but by reason of the evidence in the case . . . the two daughters need some counseling and guidance by a mother . . . ." Our search of the record finds no basis for such a factual finding. The unsupported factual determination flies in the face of the authority expressed in *Kentucky Mountain Coal Company v. Hacker*, Ky., 412 S.W.2d 581 (1967), where the court stated, "We reiterate that the evidence must be in the record to support a finding of fact; the court or jury may not supply such absent evidence by drawing upon experience *aliunde*, or by naked speculation."

■ Therefore, pursuant to *Burchett, supra*, we will evaluate the evidence in accordance with K.R.S. 403.270(1), thereby giving the process by which we reached the end result:

1. K.R.S. 403.270(1)(a), THE WISHES OF THE CHILD'S PARENT OR PARENTS AS TO HIS CUSTODY. Here, the record demonstrates both parents wish custody and their wishes appear to be earnest

and sincere. Each offers acceptable justification; however, appellee's wishes appear to be maternalistic in nature.

2. K.R.S. 403.270(1)(b), THE WISHES OF THE CHILD AS TO CUSTODIAN. Here, the children, ages sixteen and twelve, without question emphatically demand to live with their father and unequivocally express a renunciation of their mother based on hostility and bitterness.

3. K.R.S. 403.270(1)(c), THE INTERACTION AND INTERRELATIONSHIP OF THE CHILD WITH HIS PARENT OR PARENTS, HIS SIBLINGS, AND ANY OTHER PERSON WHO MAY SIGNIFICANTLY AFFECT THE CHILD'S BEST INTEREST. Here, there are no other siblings or another marriage to adjust to nor is there any future step-parent under consideration at this time by either parent. However, the interaction and interrelationship of the children with their mother, particularly since she has had them under the trial court's temporary custody order, has been a tragic circumstance. This is reflected in poor school grades, hostility, bitterness, violence, not eating on the part of one child, complaints from school authorities, and constant turmoil. The interaction and interrelationship between the children themselves shows they depend on one another and should not be separated.

4. K.R.S. 403.270(1)(d), THE CHILD'S ADJUSTMENT TO HIS HOME, SCHOOL, AND COMMUNITY. Here again the record is replete with the children's maladjustment under the sole care of their mother under the temporary order. At home they are in rebellion; at school they are getting poor grades and experiencing behavioral changes; and in the community they are becoming withdrawn.

5. K.R.S. 403.270(1)(e), THE MENTAL AND PHYSICAL HEALTH OF ALL THE INDIVIDUALS INVOLVED. Here, the appellee appears to suffer from a weak mental health condition. The record shows depression, obsession with sanitary conditions, excluding herself from the family, unequal treatment of the children, violence, and a dependency upon prescribed drugs.

These conditions may have resulted from appellant's conduct toward her but the children cannot be used as an instrument of therapy. The record does not reveal any mental or physical deficiency on the part of the appellant. We view an award of custody to the appellee as a detriment to the mental and physical health of the children.

We believe the trial court applied the wrong standard in arriving at its ultimate fact determination without giving consideration to the criteria which are statutorily required; or if there was such consideration, the trial court did not convey it to us. It is evident to us, in the trial court's granting of temporary custody and then in its award of permanent custody, that it gave preference to the mother because she was the mother under a standard expressed in *McLemore v. McLemore*, Ky., 346 S.W.2d 722 (1961) and *Casale v. Casale*, Ky., 549 S.W.2d 805 (1977). However, the legislature has eliminated the maternal preference standard by the readoption, effective in 1980, of K.R.S. 403.270(1), with the addition that "equal consideration shall be given to each parent." Also, *McLemore* and *Casale* were limited to children of tender years, not the case here.

We are reluctant to reverse the trial court on an issue of custody. However, reviewing the record, and being on an equal footing with the trial court pursuant to the authority of *Burchett, supra,* we find the best interest of the children would be served by awarding custody to the appellant, and direct the trial court to vacate its previous award and enter judgment accordingly.

We find no error in the trial court's award of maintenance to the appellee; however, the amount will have to be reevaluated under circumstances of the reversal, along with reconsideration of the award for costs and attorney's fee.

ALL CONCUR.