Brett Randell **NEWTON**, Appellant,

v.

Kelly Sue **RILEY**, Appellee.

No. 93–CA–2393–MR.

Court of Appeals of Kentucky.

June 9, 1995.

Victoria Ann Ogden, Louisville, for appellant.

Mark Hyatt Gaston, Louisville, for appellee.

Before LESTER, C.J., and GARDNER, and SCHRODER, JJ.

*OPINION*

GARDNER, Judge:

Brett Randell Newton (Brett) appeals from findings of fact, conclusions of law, and an order of the Jefferson Circuit Court which denied his motion to modify an order of joint custody. Having closely studied the facts and the law, this Court must affirm.

Brett and Kelly Sue Riley (Kelly) were divorced by a decree of dissolution of marriage entered by the Jefferson Circuit Court on May 31, 1991. The decree incorporated a prior child custody settlement which established a joint custodial arrangement. It further provided that the primary residence of the older child (Brittany) would be with Brett and that of the younger child (Caleb) would be with Kelly.

Kelly subsequently married James Riley, Jr. (James). Around February 1993, James tested positive for the Human Immunodeficiency Virus (HIV), and according to the record, the infection developed into the Acquired Immune Deficiency Syndrome (AIDS). Upon learning of James' illness and being fearful of the possibility that the children could become exposed to the virus, Brett filed a motion with the lower court seeking sole custody of the children. A hearing on the matter was conducted by the lower court on September 27, 1992, and the motion was denied by an order entered October 8, 1993. A motion before this Court for intermediate relief was denied on October 14, 1993, and this appeal followed.

The issue presented, which is one of first impression in the Commonwealth, is whether the cohabitation of a custodial parent with an HIV–infected stepparent is, taken alone, sufficient grounds for modifying custody in favor of the non-custodial parent. We cannot conclude that such cohabitation warrants a modification of custody, and accordingly find no error.

Brett's motion below requested modification of an award of joint custody. We have previously held that an award of joint custody is the functional equivalent of no award at all, since it does not change the

custodial arrangement which existed during the marriage. *Benassi v. Havens,* Ky.App., 710 S.W.2d 867 (1986). Thus, an attempt to modify joint custody must be examined *de novo* pursuant to Kentucky Revised Statute (KRS) 403.270(1), which sets forth several factors which must be considered by the lower court in establishing a custodial arrangement. *Id.* KRS 403.270(1) provides in relevant part that:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent. The court shall consider all relevant factors including: (a) The wishes of the child's parent or parents as to his custody;
>
> (b) The wishes of the child as to his custodian;
>
> (c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> (d) The child's adjustment to his home, school, and community;
>
> (e) The mental and physical health of all individuals involved; and
>
> (f) Information, records, and evidence of domestic violence as defined by KRS 403.720.

KRS 403.270(3), which addresses the mental or physical health of all individuals involved, is the provision around which the issue at bar centers. A number of published Kentucky cases have addressed this section, but they primarily are centered on the custodial parent's emotional or physical ability to care for the child, and none to our knowledge address the degree to which a parent's or stepparent's infectious viral illness may affect the child's health. *See generally Stafford v. Stafford,* Ky.App., 618 S.W.2d 578 (1981). Other jurisdictions, however, have addressed the issue at bar, and perhaps without exception have found that proof of HIV infection in a parent does not pose a direct threat to the child's health and cannot serve as the sole ground for modifying custody. In *Stewart v. Stewart,* 521 N.E.2d 956 (Ind.App.1988), for example, the court was persuaded by medical testimony that there are no known cases of

HIV transmission through casual contact between parent and child, and concluded that termination of the HIV–infected, non-custodial parent's right of visitation was not warranted. Similarly, in *Steven L. v. Dawn J.,* 148 Misc.2d 779, 561 N.Y.S.2d 322 (1990), the court held that modification of custody could be warranted only if the presence of the HIV–infected parent posed a direct danger to the child. As in *Stewart,* the medical evidence adduced in *Steven L.* supported the appellee's contention that the child was not in danger of becoming infected with HIV. This line of case law appears to have descended from litigation in both state and federal courts upholding the right of HIV–infected children to attend public school. *See generally Ray v. School District of Desoto County,* 666 F.Supp. 1524 (M.D.Fla.1987); *Thomas v. Atascadero Unified School District,* 662 F.Supp. 376 (C.D.Cal.1986).

The dispositive factor in both the public school case law and the custody/visitation case law has been the courts' reliance on the medical community's increased understanding of HIV and its modes of transmission. The widely accepted conclusion among medical researchers is that there exists "[n]o risk of HIV infection through close personal contact or sharing of household functions." *Steven L.,* 561 N.Y.S.2d at 325, *quoting Doe v. Roe,* 139 Misc.2d 209, 526 N.Y.S.2d 718, 725 (N.Y.Sup.1988). *See also* Curran et al., *Epidemiology of HIV Infection and AIDS in the United States,* 239 Sci 610, 615, n. 45 (Feb. 5, 1988); Lawrence, *HTLV–III/LAV Antibody Status of Spouses and Household Contact Assisting in Home Infusion of Hemophilia Patients,* 66 Blood 703, 704–05 (1985). Our research of scientific and medical journals has found nothing which stands inapposite to this conclusion. James' treating physician, Dr. Anna Huang (Huang), an assistant Professor of Medicine at the University of Louisville, and the sole expert witness to testify below, also offered statistics which were in accordance with the above-cited studies. Dr. Huang also stated that the primary modes of transmission of HIV are the exchange of body fluids or the sharing of needles with persons infected with HIV, as well as transmission from an infected mother to an unborn child.

Having concluded that there is no recognized risk that Brittany and Caleb will become HIV–positive through casual contact with James, and as there is nothing in the record indicating that the children will be exposed to HIV through the primary modes of transmission, the sole remaining question is whether the lower court erred in concluding that the best interest of the children is served via the existing custodial arrangement. We find no error. The factors set forth in KRS 403.270(1) were fully examined at the time of the original decree, and the effect of the lower court's denial of Brett's motion for modification of custody is to leave undisturbed the original agreement of the parties. The lower court is presumptively correct in its rulings, *City of Louisville v. Allen*, Ky., 385 S.W.2d 179 (1964), and we find no basis for tampering with the order from which this appeal arose.

For the foregoing reasons, the findings of fact, conclusions of law, and order of the Jefferson Circuit Court are affirmed.

All concur.